OPINION OF THE COURT
Joanne D. Quiñones, J.
Defendant is charged with operating a motor vehicle while intoxicated, in violation of Vehicle and Traffic Law § 1192 (3); operating a motor vehicle while impaired, in violation of Vehicle and Traffic Law § 1192 (1); and driving at a speed in excess of the posted limit in violation of Vehicle and Traffic Law § 1180 (d).
A combined Ingle/Dunaway/Huntley/refusal hearing was held on June 18, 2015. The People called one witness, Police Officer Raine Pease. I find the Officer credible. The defendant did not call any witnesses. An abridged version of this decision was rendered orally by the court on June 19, 2015. The following is the decision and order of the court:
Findings of Fact
Police Officer Raine Pease has been an officer with the New York City Police Department for nine years. He has received training in the identification of signs of intoxication — specifically bloodshot eyes and odor of alcohol coming from an individual’s breath — and the administration of an intoxilyzer. The Officer also has specialized training in estimating the speed at which a car is traveling. On November 12, 2014 Officer Pease was working in the highway patrol unit and had been for six months. At approximately 1:00 in the morning on November 12, Officer Pease was with a partner, Police Officer St. Arramon, in a marked police vehicle on the Brooklyn-Queens Expressway at Wythe Avenue in Kings County. The speed limit at that location is 45 miles per hour.
At approximately 1:05 in the morning, Officer Pease observed a black 2008 Mazda traveling at a high rate of speed. He confirmed the speed using a laser and received a reading of 67 *432 miles per hour. The Officer activated the turret lights on his vehicle and the officers followed the Mazda. The Mazda pulled over at Tillary Street which was the next available exit and the first place the driver could pull over safely. Police Officer Pease put on his “take down” lights and proceeded to the driver’s side of the vehicle. Officer St. Arramon was at the passenger side of the vehicle.
Upon approaching the driver’s side of the vehicle, Officer Pease, who had his flashlight with him, observed the defendant, the sole occupant of the car, leaning back toward the passenger seat. The Officer smelled an odor of alcohol coming from the vehicle and observed that the defendant’s eyes were bloodshot. Officer Pease asked the defendant if he had been drinking to which the defendant responded that he had one glass of wine. At that point, the defendant was still in his vehicle, he was not handcuffed, no promises or threats had been made and both officers’ guns were holstered. Based on his professional and social experiences, Officer Pease formed the opinion that the defendant was intoxicated. The Officer asked the defendant to submit to a portable breath test (PBT) and the defendant complied. The defendant failed the PBT and was placed under arrest. The defendant was then transported to the 78th Precinct.
Once at the precinct, the defendant was taken to the Intoxicated Driver Testing Unit (IDTU). The defendant was read his Miranda[1] 2rights from the inside cover of the Officer’s memo book. The reading of the Miranda warnings was memorialized on video which was entered into evidence without objection as People’s exhibit No. 2.[2] After being advised of his rights, the defendant stated that he understood those rights and agreed to answer questions by the Officer. The Officer, apparently reading from a piece of paper, then asked the defendant questions and appeared to record the defendant’s answers on that paper. Defendant was asked several questions including whether he was driving, to which he responded, “yes,” that he had been drinking at his job, and that he had a glass of wine and started at 7:00 p.m. The entire exchange was recorded in People’s exhibit No. 2 and all of the defendant’s answers were incorporated into the prosecution’s notice pursuant to Criminal Procedure Law § 710.30 (1) (a). During this *433 time no promises or threats were made to the defendant, the defendant was not handcuffed and the Officer’s weapon was in a safety locker.
After the Officer completed questioning the defendant, he informed the defendant that he had been arrested for operating a motor vehicle while under the influence of alcohol or drugs and asked the defendant if he would take a breath test. The video then shows the following colloquy (in sum and substance):
“Defendant: Can I take a . . .
“Officer Pease: (interjecting) It’s just a yes or no.
“Defendant: Can I take a lawyer? Can I take a lawyer?”
At this point another person in the room who was not depicted on camera can be heard answering, “No.”
“Officer Pease: To what I asked you it’s just a yes or a no.
“Defendant: (pointing to a desk where the officer’s memo book and the form that the officer had been writing on was placed) But you asked me before if I can take lawyer — what’s my rights?
“Officer Pease: No, this is for the test — that was just for questioning. You decided to answer the questioning after I advised you of all your rights so that part is done and past already.
“Defendant: So I can take a lawyer or no?
“Officer Pease: You could have taken a lawyer but you decided to answer the questions after I gave you the Miranda warnings.
“Defendant: You asked me if I have any questions — I can take a lawyer or no?
“Officer Pease: (pointing to the desk) I’m asking you the question right now. That is not relevant to what I’m asking you right now, we’re on another phase.
“Defendant: I can take a lawyer?
“Officer Pease: Sir, we can look into that.
“Defendant: I understand, I understand ... I ask I can take a lawyer?
“Officer Pease: Do you have the lawyer’s phone number?
“Defendant: No you told me I could take an official *434 lawyer.”
The Officer and the defendant engaged in a brief discussion about the Miranda warnings previously given and then the following colloquy took place:
“Defendant: I understand you said I can take a lawyer, now I can take a lawyer?
“Officer Pease: At this point in time I’m just offering you a test. This doesn’t have anything to do with the lawyer or an attorney at this present point in time. I’m just offering you a test.
“Defendant: I want to know what that’s about. The official lawyer.”
The Officer once again read from the Miranda warnings, with respect to the defendant’s right to an attorney for questioning, and reiterated to the defendant that he had replied “yes” that he understood. The Officer then said to the defendant, “you decided to answer the questions. You clearly stated ‘yes’ that you understood so now at this time we have moved past that point — you decided to answer questions. But you clearly understood.” While the Officer was going over the Miranda warnings he had previously given the defendant, the defendant made several attempts to speak and the Officer spoke over him. The defendant then told the Officer, “But I didn’t know that has to be. I’m not American, I’m Romanian, sorry.”
Officer Pease stated to the defendant, “All I ask of you right now is to take this breath test, that’s all I’m asking.” Defendant attempted to speak and the Officer spoke over him and stated
“Sir, listen to me, you’re making this a lot more difficult than it doesn’t [sic] have to be. Right now we’re at the breath portion of the test and all I’m offering you is a simple breath test and it’s going to be followed by a physical coordination test and the answers that I’m requiring is either a yes or no, that’s it.”
Defendant interjected, and attempted to speak and pointed again at the papers on the desk. The Officer cut him off and stated “Sir, listen, we’ll get back into that in a minute but right now I’m asking you if you want to take the test.” The defendant responded “No, I don’t want to take the test.” The Officer asked him again whether he would take the test and then read him the refusal warnings from a sheet of paper and asked once *435 more if defendant would take the test. The defendant replied, “No.” Defendant was then asked if he would take physical coordination tests and the defendant complied. Approximately four minutes elapsed from the time the defendant was initially asked to take the chemical breath test to the time he ultimately refused. In that time period, the defendant requested an attorney or made reference to an attorney at least 10 times.
Conclusions of Law

Ingle

With respect to the stop of the defendant’s automobile, a single vehicle traveling on a public highway may be stopped when a police officer has reasonable suspicion that a traffic violation has occurred (People v Ingle, 36 NY2d 413, 414-415 [1975]). Here, the defendant’s violation of the speed limit gave the Officer reasonable suspicion (see People v McLaurin, 70 NY2d 779 [1987] [stop of speeding vehicle was justified]; People v Argentina, 150 AD2d 703 [2d Dept 1989] [same]; People v Gooden, 111 AD2d 871 [2d Dept 1985] [same]). Accordingly, the Officer’s initial stop of the defendant’s vehicle was justified.

Dunaway

“Probable cause requires the existence of facts and circumstances which, when viewed as a whole, would lead a reasonable person possessing the same expertise as the arresting officer to conclude that an offense has been or is being committed, and that the defendant committed or is committing that offense” (People v Salmon, 13 Misc 3d 1244[A], 2006 NY Slip Op 52338[U], *6 [Sup Ct, Kings County 2013, Collini, J.]; People v Bigelow, 66 NY2d 417 [1985]; People v McRay, 51 NY2d 594 [1980]). After stopping the vehicle, Officer Pease observed the defendant to have an odor of alcohol emanating from his breath and to have bloodshot eyes. Additionally, the defendant failed a field sobriety test and had been driving at an excessive rate of speed. Based upon those facts the Officer had probable cause to arrest the defendant (see People v Vargas, 123 AD3d 1149 [2d Dept 2014] [defendant’s appearance combined with the smell of alcohol emanating from him and his failure of a field sobriety test gave officer probable cause to arrest for driving while intoxicated]; People v Tieman, 112 AD3d 975 [2d Dept 2013] [glassy eyes combined with odor of alcohol emanating from defendant’s breath combined with erratic driving gave the police probable cause to arrest the defendant for violating Vehicle and Traffic Law § 1192]).

*436
Huntley

With respect to the defendant’s statements, the People have the burden of proving beyond a reasonable doubt that they were voluntarily made. It is manifest that a defendant who is in custody may not be interrogated by law enforcement without being advised of his constitutional rights (Miranda v Arizona, 384 US 436 [1966]). “Both the elements of police ‘custody’ and police ‘interrogation’ must be present before law enforcement officials constitutionally are obligated to provide the procedural safeguards imposed upon them by Miranda” (People v Huffman, 41 NY2d 29, 33 [1976]). In this case, when the defendant was asked a question while in his vehicle it was a temporary roadside detention for investigative questioning which is noncustodial in nature and did not require Miranda warnings (see People v MacKenzie, 9 Misc 3d 129[A], 2005 NY Slip Op 51535 [U] [App Term, 2d Dept, 9th & 10th Jud Dists 2005]; People v Myers, 1 AD3d 382 [2d Dept 2003]). Accordingly, the first statement by the defendant, that he had one glass of wine, was voluntarily made and is admissible.
The defendant’s second statements, that he had been driving and had one glass of wine and the remainder of the answers given in the IDTU, are also admissible. While it is evident that the defendant was in custody, the defendant was clearly given his Miranda warnings and after being given those warnings he indicated that he understood them and was willing to speak to the police. Here, the People have proved beyond a reasonable doubt that the second statements were voluntarily made. Accordingly, defendant’s motion to suppress his statements is denied.
Refusal
With respect to the refusal, the Court of Appeals has recognized a limited right for a defendant facing an alcohol-related motor vehicle charge to request legal consultation before consenting to a chemical test (see People v Gursey, 22 NY2d 224 [1968]). Specifically, the Court has held that
“if a defendant arrested for driving while under the influence of alcohol asks to contact an attorney before responding to a request to take a chemical test, the police ‘may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand’ ” (People *437 v Smith, 18 NY3d 544, 549 [2012], citing Gursey, 22 NY2d at 227).
If such request is made, and it is feasible for the police to allow a defendant to attempt to reach counsel without unduly delaying administration of the chemical test, a defendant should be afforded such an opportunity (see Smith, 18 NY3d at 549). While this is a limited right, it is a right nonetheless and its denial warrants suppression of any resulting evidence at any subsequent criminal trial (People v Washington, 23 NY3d 228 [2014]).
This court finds that a two-step analysis is required to determine whether a defendant’s limited right to an attorney has been infringed upon. First, the court must decide whether a defendant has asked for an attorney before responding to a request to take a chemical test. (People v Shaw, 72 NY2d 1032 [1988]; Gursey, 22 NY2d at 228.) If the court finds no such request was made, further analysis is unnecessary as the defendant’s limited right to counsel has not been triggered and therefore no violation has occurred (Shaw, 72 NY2d at 1034). If, however, the court finds that such request was made, then, in the second step of the analysis, the court must determine whether the People have shown that fulfilling, or attempting to fulfill, the defendant’s request for an attorney would have unduly delayed administration of the chemical test (People v Monahan, 295 AD2d 626 [2d Dept 2002]; People v Kearney, 261 AD2d 638 [2d Dept 1999]).
Request for Attorney
A defendant’s request for an attorney must be unequivocal (see generally People v Glover, 87 NY2d 838 [1995]). The request must inform police of the defendant’s intention to retain counsel or that he wants the opportunity to consult with an attorney before undertaking the chemical test (People v Hart, 191 AD2d 991 [4th Dept 1993] [defendant’s statements to police were insufficient to show an unequivocal, specific request for an attorney]). Generalized requests for an attorney are insufficient to invoke the limited or qualified right to counsel; the request must be particularly made in relation to the defendant’s decision to consent or refuse the chemical test (People v Curkendall, 12 AD3d 710 [3d Dept 2004] [defendant’s general request for an attorney during Miranda rights did not invoke right to counsel for purpose of chemical test]).
In this case, the court finds that the defendant unequivocally requested an attorney, or consultation with an attorney, prior *438 to refusing to take the chemical test. The defendant’s multiple requests, directly in response to the Officer’s repeated insistence that the defendant answer “yes” or “no” to taking a chemical test, were sufficiently specific to indicate the defendant wanted to consult with an attorney prior to making his decision to refuse or consent to chemical testing. I further find that Officer Pease’s own repeated statements that “[t]his is for the test” sandwiched between defendant’s requests “Can I take a lawyer?” and “So I can’t take a lawyer now?” establish that defendant’s request was a specific request for an attorney vis-avis the decision of whether or not to submit to a chemical breath test (Curkendall, 12 AD3d at 715). Defendant’s demeanor and words were, under the circumstances, indicative of an unequivocal request for an attorney (see Glover, 87 NY2d at 839).
Undue Delay or Interference
Having determined that the defendant specifically requested an attorney for the purpose of deciding whether to submit to a chemical test, the court now turns to the second phase of inquiry, whether the People have shown that fulfilling, or attempting to fulfill, the defendant’s request for an attorney would have unduly delayed administration of the chemical test. If the People failed to make such a showing or if the court determines that administration of the chemical test would not have been unduly delayed by fulfilling the defendant’s request, a violation of the defendant’s limited right to an attorney has occurred (see Gursey, 22 NY2d 224; Washington, 23 NY3d 228; People v Mora-Hernandez, 77 AD3d 531 [1st Dept 2010]).
Under the circumstances in this case, the court finds that the People have failed to show that the police made any efforts to comply with the defendant’s requests for an attorney or that fulfilling defendant’s request would have unduly delayed the administration of the chemical test (see Mora-Hernandez, 77 AD3d at 531 [suppression of breath results and videotape warranted where repeated requests for an attorney were ignored by police and there was no indication that complying with the requests would have interfered with proceedings]; cf. People v O’Rama, 78 NY2d 270, 280 [1991] [defendant’s statement that his attorney would not be available “for several hours” and his insistence on waiting for attorney was properly deemed a refusal]). At the hearing, the People offered no evidence demonstrating that granting defendant’s request for counsel would have substantially interfered with the investigative procedure *439 and I find that Officer Pease made no efforts to comply with the defendant’s requests.
Accordingly, the defendant’s limited right to an attorney was violated in this case and evidence of the defendant’s refusal is therefore suppressed.

. Miranda v Arizona, 384 US 436 (1966).

. People’s exhibit No. 1 was the Intoxicated Driver Examination Instruction Sheet.