OPINION OF THE COURT
Althea E. Drysdale, J.
On December 21, 2015, a Dunaway/Johnson refusal hearing was held before this court. The People presented Detective James Southerton as a witness, and the defense presented no witnesses. The court credits the testimony of Detective Southerton and makes the following findings of fact and conclusions of law.
Statement of Facts
On March 29, 2015, at approximately 4:15 a.m., Detective James Southerton was on patrol in uniform in a marked vehicle at 50th Street and Borough Place in Queens County, New York, when he received a radio run for shots fired at 50-37 Newtown Road (tr at 6). The radio run was based on a 911 call that associated a dark colored Suburban, red in color, with the shooting (tr at 7, 36). Two other vehicles, a Yukon and a gray vehicle were also mentioned in the sprint report (tr at 20). Detective Southerton and his partner then traveled southbound on 51st Street towards 50-37 Newtown Road to look for a possible gunman in the area (tr at 7). At about 4:20 a.m., Detective Southerton observed a red Suburban, turned on his lights and sirens and pulled the vehicle over (tr at 8, 9). Detective Southerton *865 and several other officers exited their vehicles and surrounded the red Suburban (tr at 10). The defendant was sitting in the driver’s seat of the vehicle and her window was open (tr at 11). Detective Southerton and his partner asked the defendant to step out of her vehicle and the defendant complied (tr at 10, 12). Detective Southerton observed the defendant to be very-agitated, have bloodshot watery eyes, have the smell of alcohol, and she swayed on her feet as she exited the vehicle (tr at 12, 35). She was waving a shield around and claimed to be a member of a police agency (tr at 12). Her speech was slurred (tr at 28). At that time, Detective Southerton determined that the defendant was intoxicated and placed the defendant in his vehicle to transfer her to the 112th Precinct (tr at 12). While inside of the police vehicle, the defendant was yelling and screaming (tr at 14). She said that she does the same job as the police, without a gun (tr at 14).
At the 112th Precinct the defendant was advised that she was under arrest for being intoxicated while driving and she was offered a chemical test. She refused. The defendant was read the refusal warnings and was again asked to take a chemical test. The defendant stated that she wanted to make a phone call. The officer questioning the defendant in the Intoxicated Driver Testing Unit (IDTU) video told the defendant: “okay, but right now you have to answer yes or no.” The defendant again asked to make a phone call and insisted that she is allowed to make a call. The officer told the defendant “you are allowed to make a phone call but [not] as of right now.” The defendant interrupted the officer and indicated that she would not answer to anything until she was able to make a phone call. The officer also asked the defendant to submit to a physical test and she refused. The defendant clearly declared that she would comply if she was “just allowed to make her phone call first.” The officer advised her that she could not make a phone call because they were in the middle of the test. The defendant asked why she was not allowed to call “somebody.” At that point, the officer ended the video.
Conclusions of Law
Generally, in order for a police officer to legally stop a vehicle, the officer must have a reasonable suspicion that the occupants had been, were in the process of or were about to be engaged in criminal conduct. Here, Detective Southerton received a radio run for shots fired at 50-37 Newtown Road. The radio run *866 reported that a dark, red colored Suburban was involved. Shortly thereafter, upon approaching the reported location, Detective Southerton saw the defendant’s vehicle, which matched the description. This court finds that, given the contents of the radio run and the temporal and spacial vicinity in which the Detective observed the defendant in a vehicle matching the description, Detective Southerton had a reasonable suspicion to stop the defendant’s vehicle (cf. People v Tindal, 231 AD2d 404 [1st Dept 1996]).
Detective Southerton’s observations, taken together, that the defendant had bloodshot watery eyes, slurred speech, smelled of alcohol, was highly agitated, and was unsteady on her feet when exiting her vehicle, provided him with probable cause to believe that the defendant had committed the crime of operating a motor vehicle while under the influence of alcohol or drugs (People v Tieman, 112 AD3d 975, 976 [2d Dept 2013]; People v Blajeski, 125 AD2d 582 [2d Dept 1986]).
This court finds that the unnoticed statements of the defendant elicited at the hearing put the defense on notice of the People’s intention to use them, and the defense received a full opportunity to challenge the voluntariness of the statements on cross-examination at the suppression hearing (see People v Schnugg, 257 AD2d 669 [2d Dept 1999]; People v Tuthill, 24 Misc 3d 46 [App Term, 2d Dept, 9th & 10th Jud Dists 2009]; People v Sydlar, 106 AD3d 1368 [3d Dept 2013]). The defendant’s motion to preclude those statements, based on the People’s failure to provide timely notice under CPL 710.30 (1) (a) is, accordingly, denied. Defendant’s statements that she was on the job, worked with a police agency, and did the same job as the police without a gun, were spontaneous and not triggered by police questioning; they were, therefore, lawfully obtained (see People v Williams, 97 AD3d 769 [2d Dept 2012]). The court further finds that there was no testimony which would indicate that the statements were coerced or involuntarily made.
When a hearing is conducted to address a motion to suppress evidence of a refusal to take a chemical examination, the People are required to show that sufficient warnings are given in clear and unequivocal language, and warn the defendant of the effect of a refusal. The People must also demonstrate that the defendant’s refusal was persistent (Vehicle and Traffic Law § 1194 [2] [f]). The defendant must be warned that a refusal will be admissible at a future proceeding, hearing or trial *867 (Vehicle and Traffic Law § 1194 [2] [f|) and that her license will be suspended and subsequently revoked, regardless of whether she is found guilty at trial (Vehicle and Traffic Law § 1194 [2] [b]). This court finds that the officer’s testimony and the IDTU video demonstrate that sufficient warnings were given in clear and unequivocal language of the effect of the refusal. The defendant was asked to take a chemical test twice.
The defense argues that the defendant’s refusal was not persistent, as after the refusal warnings were read to her, she asked to make a phone call, and her constitutional right to counsel was violated when the police prevented her from seeking legal advice prior to the request to take a chemical test. After arrest and prior to arraignment, defendants are permitted to communicate by phone for the purposes of obtaining counsel and informing a relative or friend that they have been arrested unless granting such a phone call would compromise an ongoing investigation or the prosecution of the defendant (CPL 140.20 [7]). However, a defendant facing a motor vehicle charge related to alcohol intoxication has a limited right to request legal consultation before consenting to a chemical test (see People v Gursey, 22 NY2d 224 [1968]; People v Stanciu, 49 Misc 3d 430 [Crim Ct, Kings County 2015]).
“ [I] f a defendant arrested for driving while under the influence of alcohol asks to contact an attorney before responding to a request to take a chemical test, the police ‘may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand’ ” (People v Smith, 18 NY3d 544, 549 [2012], citing Gursey, 22 NY2d at 227).
When such a request is made, the defendant should be given the opportunity to make a call, as long as it does not unduly delay administration of the chemical test (Stanciu, 49 Misc 3d at 437).
The first concern to address in analyzing whether the defendant’s right to an attorney was infringed upon is to decide whether the defendant asked for an attorney before responding to a request to take a chemical test (id.). A defendant’s request for counsel must be unequivocal and must inform the police that the defendant intends to retain counsel or consult with an attorney before making a decision with regards to his or her *868 response to the chemical test (see id.; People v Glover, 87 NY2d 838 [1995]; People v Hart, 191 AD2d 991 [4th Dept 1993]; People v Hicks, 69 NY2d 969 [1987]). If the request was not unequivocal, “further analysis is unnecessary as the defendant’s limited right to counsel has not been triggered and therefore no violation . . . occurred” (Stanciu, 49 Misc 3d at 437).
In the instant case, the defendant is seen asking to make a call multiple times. At one point the defendant asked why she was not permitted to call “somebody.” She does not say that she intends to contact an attorney. She does not even mention the words: “attorney” or “lawyer.” Further, inasmuch as “the police must rely on information given to them by the defendant to adequately facilitate access to counsel” (People v Dejac, 187 Misc 2d 287, 291-292 [Sup Ct, Monroe County 2001]), and the defendant failed to provide the police with the name of, or the correct/working number of her attorney, or any other information to assist them in contacting her attorney, it cannot be said, under the circumstances of this case, that the defendant was deprived of her qualified right to consult with an attorney. As such, this court finds that the defendant did not unequivocally request the opportunity to speak with an attorney, and thus finds that the defendant’s refusal was persistent.
Based upon the foregoing, the defendant’s motions to preclude the statements made by the defendant at the scene, and suppress the refusal and the officer’s observations are denied.