Breitel, J.
The People appeal from an order of the Appellate Term unanimously reversing a judgment of the Criminal Court of the City of New York, New York County, and ordering a new trial. Defendant had been convicted, after trial, of the misdemeanor of driving while intoxicated (Vehicle and Traffic Law, § 1192, subd. 2) and the offense of driving the wrong way on a one-way street.* On the drunken driving charge, he was sentenced to pay a fine of $100 or serve 10 days in jail. The latter conviction was reversed by the Appellate Term because of the trial court’s failure to suppress on defendant’s application the results of a drunkometer test performed after defendant had been denied an opportunity to telephone his lawyer. Since there was sufficient other evidence of intoxication, the Appellate Term ordered a new trial.
The only issue presented is whether a criminal conviction may rest upon the results of a chemical test performed over the defendant’s initial objection and after he had been prevented from telephoning his lawyer for legal advice concerning the test, such communication involving no significant or obstructive delay. Since it is concluded that the test results were secured in violation of defendant’s privilege of access to counsel without occa* sioning any significant or obstructive delay, the order of the Appellate Term should be affirmed.
On the evening of February 7, 1966, one Patrolman Foley, while on radio patrol, stopped defendant’s automobile traveling *227 eastward in Manhattan on 47th Street, a one-way west street. While questioning defendant driver, the officer noticed that defendant’s head was bobbing, Ms speech was slurred, and his breath betrayed an alcoholic odor. The officer drove defendant to the station house and questioned him there. At a point during the questioning, defendant asked, permission to call Ms lawyer and was told, “You will be allowed to make a call to your attorney after I get this information. ’ ’ Significantly, defendant had a particular attorney in mind when he requested permission to call.. Although at one point defendant indicated an intention to claim his privilege against self incrimination, he nevertheless continued to answer questions and perform co-ordination tests, after Ms request to call Ms lawyer had been denied. When asked to submit tó' a drunkometer or breath analysis test, however, defendant refused, and again asked for permission to call Ms lawyer. Another police officer, the sergeant in charge of the drunkometer test, told defendant, “ You have got to take tMs test.” When defendant asked what would happen if he did not submit to the test, the sergeant replied, “ If you don’t take this test, the State will take away your license.” Thereupon, defendant submitted to the test.
At trial, a voir dire was held to determine the admissibility of the statements made by defendant as well as the results of the physical co-ordination exercises and drunkometer tests. The trial court suppressed the statements and the results of the co-ordination tests, but admitted evidence of the drunkometer readings. The Appellate Term unanimously reversed on the ground that “ the denial of defendant’s request to telephone his attorney before he took the test violated Ms constitutional rights ”.
In light of current recognition of the importance of counsel in criminal proceedings affecting significant legal rights, law enforcement officials may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand. TMs court recently noted, in another context, that: “As a matter of fairness, government ought not compel individuals to make binding decisions concerning their legal rights in the enforced *228 absence of counsel ” (People v. Ianniello, 21 N Y 2d 418, 424; see Escobedo v. Illinois, 378 U. S. 478, 486; People v. Donovan, 13 N Y 2d 148, 153). In the present case, defendant possessed a number of statutory options which could be asserted only during the transaction at the station house, and concerning which the advice of counsel, if available, was relevant.
Subdivision 1 of section 1194 of the Vehicle and Traffic Law reads: “1. Any person who operates a motor vehicle or motorcycle in this state shall be deemed to have given his consent to a chemical test of his breath, blood, urine, or saliva for the purpose of determining the alcoholic * * * content of his blood provided that such test is administered at the direction of a police officer having reasonable grounds to believe such person to have been driving in an intoxicated condition or, while his ability to operate such motor vehicle or motorcycle was impaired by the consumption of alcohol * * * and in accordance with the rules and regulations established by the police force of which he is a member. If such person having been placed under arrest and having thereafter been requested to submit to such chemical test refuses to submit to such chemical test, the test shall not be given, but the commissioner shall revoke his license or permit to drive and any non-resident operating privilege ”.
By these provisions, defendant had the option to refuse to take the drunkometer test, electing instead to submit to the revocation of his license. In addition, if he elected to take the test, he was entitled “ to have a physician of his own choosing administer a chemical test in addition to the one administered at the direction of the police officer ” (Vehicle and Traffic Law, § 1194, subd. 4). Of course, defendant was informed that he would lose his license if he refused to take the police-administered test. Nevertheless, he wished legal counseling concerning his option and refused to submit to the test until his several requests to telephone his lawyer were denied. Granting defendant’s requests would not have substantially interfered with the investigative procedure, since the telephone call would have been concluded in a matter of minutes. At least, the record here does not indicate otherwise. Consequently, the denial of defendant’s requests for an opportunity to telephone his lawyer must be deemed to have violated his privilege of access to counsel.
*229 Quite different was the situation in Matter of Story v. Hults (19 N Y 2d 936, affg. 27 A D 2d 745) in which, apart from the quite significant fact that only an administrative proceeding was involved, petitioner’s lawyer did not appear at the station house until just before the expiration of the statutory two-hour period, and in the meantime petitioner had refused to submit to the test. It is notable, however, that in the Story case petitioner was permitted to telephone his wife or his lawyer, and he did call his wife, who, evidently, procured the lawyer, but too late.
The privilege of consulting with counsel concerning the exercise of legal rights should not, however, extend so far as to palpably impair or nullify the statutory procedure requiring drivers to choose between taking the test or losing their licenses. It is common knowledge that the human body dissipates alcohol rapidly and, indeed, under subdivision 3 of section 1192 of the Vehicle and Traffic Law, test results are admissible in evidence only if the test had been taken within two hours of the time of arrest. Where the defendant wishes only to telephone his lawyer or consult with a lawyer present in the station house or immediately available there, no danger of delay is posed. But, to be sure, there can be no recognition of an absolute right to refuse the test until a lawyer reaches the scene (see Matter of Finocchairo v. Kelly, 11 N Y 2d 58, 61 [Van Voorhis, J., concurring]). If the lawyer is not physically present and cannot be reached promptly by telephone or otherwise, the defendant may be required to elect between taking the test and submitting to revocation of his license, without the aid of counsel.
Nor is any issue of self incrimination presented in this case, namely, whether defendant was subject to a chemical test, on which Schmerber v. California (384 U. S. 757), involving a blood test, would be applicable (see, also, State v. Kenderski, 99 N. J. Super. 224).
Accordingly, the order of the Appellate Term should be affirmed.
Chief Judge Furo and Judges Burke, Sczleppi, Bebgan, Keating and Jasen concur.
Order affirmed.

 On this charge defendant was fined $5 or two days, and evidently there was no appeal.