OPINION OF THE COURT
Charles J. Heffernan, Jr., J.
On its facts, this is a case of first impression. Defendant *663 stands charged with driving while intoxicated (Vehicle and Traffic Law § 1192 [2]) and related charges based upon his operation of an automobile in New York County in the early morning hours of December 20, 1989. The People seek to introduce at trial evidence that defendant refused to submit to a breathalyzer test.
Defendant has moved, for the third time, to suppress evidence of this refusal.[1] Each motion was based on the ground of denied access to counsel. Notwithstanding the denials of this motion by two other Judges on this issue, this court granted a hearing, pursuant to defendant’s motion dated December 5, 1990 on two grounds: (1) that suppression is required in view of a previously unasserted Federal constitutional right premised on the recent decision of the United States Supreme Court in Minnick v Mississippi (498 US —, 111 S Ct 486 [Dec. 3, 1990]); (2) that the interests of justice would be served by permitting airing of this issue, despite defendant’s previous failure to pursue it in prior motion litigation. (See, People v Coleman, 114 Misc 2d 685 [Sup Ct, Kings County 1982]; People v Perry, 128 Misc 2d 430 [Sup Ct, NY County 1985].)
This case presents the unique question whether evidence of that refusal should be suppressed on the ground that defendant was improperly denied access to counsel, where the requested attorney was then in police custody, having been separately arrested on a charge that he sought to physically interfere with police efforts to arrest defendant.

The Parties’ Contentions

Defendant contends that he requested the aid of a doctor and lawyer some 50 times after his arrest, beginning shortly after the police arrived at the accident scene; that the police were aware of those requests; that his attorney, before his own arrest, told the police that he was defendant’s counsel and that all questioning of defendant should be channelled through him; and that the police deprived defendant of his right to counsel.
The People counter that the attorney’s arrest rendered him unavailable as counsel to defendant and that defendant’s refusal to submit to the test was not tainted by the absence of an opportunity to confer with counsel, given the circumstances there present.

*664
The Hearing

A hearing on the motion was held before this court on February 14, 25 and 26, 1991. The People called two witnesses: Police Officer Timothy Vanderberg of the 10th Precinct, and Jeffrey Bergida, a passenger in defendant’s vehicle. Defendant called as witnesses two police officers, Herbert Koota of Highway Patrol Unit 1 and Steven Cruz of the 10th Precinct, and also testified in his own behalf.

Findings of Fact

At approximately 1:50 a.m. on December 20, 1989, an accident occurred between two automobiles near the intersection of West 23rd Street and Eighth Avenue in New York County. Defendant was the driver of one of those automobiles. Three passengers were in defendant’s car: an unidentified female, and two males, Jim Martino and Bergida, both of whom are attorneys.
Two police officers assigned to the 10th Precinct, Vanderberg and Cruz, arrived at the scene approximately two minutes after the accident. They found the female passenger inside defendant’s vehicle, apparently unconscious. Defendant and his two male passengers, Bergida and Martino,, were standing on the street outside defendant’s car.
Vanderberg approached defendant and Bergida, who were standing side-by-side next to the passenger side of defendant’s car, and asked defendant who had been driving that vehicle. No response was given. The inquiry was repeated, again without response. When the question was put a third time, Bergida nodded his head toward defendant, indicating that defendant was the driver. Vanderberg asked defendant for the keys to the car, and defendant refused to comply with that request. Several more such requests were made and refused. Finally, Bergida took the keys from defendant and handed them to Vanderberg.
Vanderberg, noting the smell of alcohol emanating from the location where defendant and Bergida were standing, then said "I smell alcohol.” Defendant responded by saying "I had a couple of drinks.”
While there was conflicting testimony on the point, this court finds that after that statement was made by defendant, Bergida told the police that he was a lawyer, that he represented defendant in this matter, and that any further questioning of defendant should be done through Bergida.
*665 Vanderberg, noting defendant’s slurred speech, glassy eyes, unsteadiness on his feet, odor of alcohol on his breath, together with other facts, then placed defendant under arrest for driving while intoxicated.[2] Bergida was also arrested and charged with obstructing governmental administration and other charges, on the ground that he physically and verbally interfered with the police attempt to arrest defendant.[3]
Defendant and Bergida were each arrested at 2:05 a.m., some 15 minutes after the accident. Their paths then diverged. Bergida was taken by the police to St. Clare’s Hospital, where he was treated at approximately 2:36 a.m. for injuries sustained in the auto accident. He remained at the hospital for about one hour, and was then driven to the 10th Precinct station house, arriving there at approximately 4:00 A.M.
Defendant, however, was taken first to the 28th Precinct headquarters, where all Manhattan driving while intoxicated arrests are initially processed. At 3:27 A.M., on videotape, Officer Koota requested that defendant submit to a breathalyzer examination, after first warning him of the consequences of refusal. The videotape, received in evidence at the hearing, shows that in response to each statement made to him defendant stated that he wanted to "see a doctor and my lawyer.” As discussed more fully below, the reference to "my lawyer” pertains to Bergida. Defendant’s final statement on the tape was in response to Officer Koota’s question whether defendant would consent to the breathalyzer test. Defendant’s response was "No”, followed again by the request to see "a doctor and my lawyer.”
The court finds that, contrary to defendant’s testimony at the hearing, the first request that defendant made for counsel was at 3:27 a.m. during the videotaped request by Officer Koota that defendant submit to the breathalyzer test. Follow *666 ing this refusal, defendant was transported from the 28th Precinct to the 10th Precinct headquarters, where he and Bergida were reunited and their arrests further processed.

The Law

To resolve the question before the court, it is not necessary to determine the validity of Bergida’s arrest, as that issue was not joined by defendant.[4] It is sufficient to note that Bergida was in fact placed under arrest, and that at the time of the breathalyzer test request, Bergida was in custody under police guard at St. Clare’s Hospital.
The focus of this hearing must be defendant’s refusal to take the breathalyzer examination. That refusal occurred at approximately 3:27 a.m. on December 20, 1989 (some one hour and 22 minutes after defendant’s arrest) in the 28th Precinct station house. Thus, the evidence of the events on the street at the time surrounding the accident are not central to this hearing, for the reasons first, that no breathalyzer request was made at that time, and second, as noted above, that defendant has not alleged that Bergida’s arrest was vindictive or a product of police misconduct.
Under Vehicle and Traffic Law § 1194 (2) (a) any person who operates a motor vehicle in New York State shall be deemed *667 to have given consent to certain testing, including a blood alcohol content, or breathalyzer test when a police officer has reasonable grounds to believe that the person has violated Vehicle and Traffic Law § 1192, so long as the test is administered within two hours of the arrest. Under Vehicle and Traffic Law § 1194 (2) (f), a driver who refuses a request to submit to such test after having been given sufficient warning, in clear and unequivocal language, of the effect of such refusal, faces the prospect of evidence of the refusal being introduced in evidence at a trial, proceeding or hearing based upon the Vehicle and Traffic Law § 1192 charges.
A defendant has no constitutional right to be afforded counsel when asked to consent to a sobriety test. (People v Shaw, 72 NY2d 1032 [1988].) Under New York State law, a defendant who has been arrested for driving while intoxicated, but not yet formally charged in court, generally has the right to consult with a lawyer before deciding whether to consent to a sobriety test, if he requests the assistance of counsel. (People v Gursey, 22 NY2d 224 [1968].)
The following principles of Gursey are instructive in deciding the instant motion: (1) "law enforcement officials may not, without jurisdiction, prevent access between the criminal accused and his [or her] lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand” (supra, at 227); (2) "[t]he privilege of consulting with counsel concerning the exercise of legal rights should not, however, extend so far as to palpably impair or nullify the statutory procedure requiring drivers to choose between taking the test or losing their licenses” (supra, at 229). The reason for this is that human body dissipation of alcohol is rapid and Vehicle and Traffic Law § 1194 (2) renders a sobriety test admissible only if the test is administered within two hours of the time of arrest; (3) where the defendant wishes only to telephone counsel or consult with counsel who is either present at the station house or immediately available there, no danger of delay is posed; (4) there is, however, no absolute right to refuse the test until a lawyer reaches the scene; (5) "[i]f the lawyer is not physically present and cannot be reached promptly by telephone or otherwise, the defendant may be required to elect between taking the test and submitting to revocation of his license, without the aid of counsel” (supra, at 229).
Applying those principles to the facts at bar, it must first be noted that when defendant asked to see "my lawyer” he was *668 referring only to Bergida, who was not then present at the 28th Precinct station house.[5]
The core question, then, becomes whether Bergida, who was himself in police custody, was at that time "available in person or by immediate telephone communication” under Gursey (supra, at 227). If he was so available, the motion to suppress evidence of defendant’s refusal to submit to the breathalyzer test must be granted. If he was not, the motion must be denied.
It is necessary, then, to determine the legal significance of Bergida’s status as an arrestee at 3:27 a.m. when the request for "my lawyer” was made.
At that moment, Bergida was in police custody at St. Clare’s Hospital, in midtown Manhattan, several miles distant from defendant’s location at the 28th Precinct. He was at the hospital undergoing treatment for injuries which he sustained during the collision between defendant’s vehicle and the taxicab.
Were Bergida merely a medical patient at that time, perhaps further inquiry would have been helpful toward determining whether he was then in sufficient health to counsel defendant by telephone in the 23 minutes remaining in the statutory two-hour period within which the breathalyzer test must be given. The need for such inquiry is obviated, however, by Bergida’s additional status as arrestee. Since Bergida had been arrested simultaneously with defendant, based upon a charge that he physically interfered with defendant’s arrest, Bergida’s legal status was identical to that of defendant, i.e., a detainee.
As such, he was then subject to the same regulations and procedure that attend all persons placed under arrest, attorney or not. The need for security cannot be dismissed, nor should it be for any arrestee in custody. While it is true that there are gradations of necessary security that vary with the offender, the offense and other attendant circumstances, it can hardly be gainsaid that adherence to regular police procedure is an important principle governing the processing of such persons.
*669 Once an attorney is charged with a crime and taken into custody, her or his status changes. Limitations accrue to the person of the lawyer. Concomitantly, there appear constraints upon the lawyer’s right to practice law while in police custody. In the normal course, for example, the lawyer would not have the right to be transported to a location, unrelated to the processing of the lawyer’s arrest, in order to meet a professional obligation. Nor could the lawyer correctly expect the police to provide access to a telephone different from that afforded arrestees, so that the lawyer could advise her or his clients.[6]
While this court’s research has yielded no case with facts identical to the extraordinary situation at bar, logical extension of those principles lead to no different result in this case. Bergida was under arrest. Defendant has neither contended nor suggested that the police had any obligation to transport Bergida to the 28th Precinct for consultation with defendant or to arrange telephone communication between them when the request for "my lawyer” was made. It is significant that such a position was not advanced, for to do so would be to urge the legally untenable. Neither reason nor the present state of the law imposes any such duty.
This court concludes, therefore, that the police had no legal obligation to render Bergida available to defendant, either in person or by telephone, while Bergida was in custody.[7] To the contrary, what the police did here was to conform to established practice. Neither defendant nor Bergida was treated differently from any other arrestee in their respective situa *670 tians. Having elected to seek counsel from an attorney then under separate arrest on a charge of physical interference with defendant’s arrest, defendant cannot now fairly be heard to demand the benefit of suppression of his refusal to take a breathalyzer test on the ground that he was denied access to his counsel before electing to refuse the test.
The motion is, therefore, denied.

. See footnote 4, infra, for the chronology of the motion practice on this issue.

. By decision dated November 27, 1991, Judge Peter Benitez of this court ruled that the police had probable cause to arrest defendant at the time that Officer Vanderberg did so. That determination being the law of the case, there is no occasion for this court to resolve that question.

. On May 17, 1990 in Part AP-9 of this court, the charges against Bergida were dismissed on motion of the People. In support of that motion, the prosecutor contended that Bergida did physically interpose himself between defendant and the police and ignored a police warning that his own arrest would follow unless he moved out of the way. The People cited the facts that there was at best "a technical violation” of Penal Law § 195.05, the absence of a prior criminal record by Bergida, and the interest of justice as reasons prompting the motion to dismiss.

. Three motions were filed by predecessor counsel seeking suppression of evidence of defendant’s refusal to submit to the breathalyzer test on the ground that he was denied his right to counsel before electing to refuse the test. The first such motion, based upon the affirmation of Peter Wessel, Esq., dated April 7, 1990, was not litigated by defendant at the omnibus suppression hearing conducted on August 9, 1990 before Judicial Hearing Officer Ernest Bianchi. Nor did defendant mention that issue at that hearing. The second such motion, based upon Mr. Wessel’s affirmation dated October 26, 1990, was denied in an opinion by Judge Benitez dated November 27, 1990, in which that court found, in part, that defendant had waived his motion to suppress the refusal evidence on the ground that he was denied access to counsel by failing to prosecute that motion at the hearing before Judicial Hearing Officer Bianchi. As noted at page 2, supra, the third such motion, based upon Mr. Wessel’s affirmation dated December 5, 1990, was premised entirely on the then newly released opinion of the United States Supreme Court in Minnick v Mississippi (498 US —, 111 S Ct 486 [Dec. 3, 1990]), an opinion which present counsel concedes is not applicable to this hearing. Instead, the parties agree that the principal governing precedent is People v Gursey (22 NY2d 224), discussed infra.
Significantly, in none of those motions did counsel allege that Bergida’s arrest was illegal or otherwise improper.
Moreover, the validity of the arrest of Bergida was not joined by defendant’s counsel in oral argument at the end of this hearing.

. At oral argument, defendant urged the court to find that the "my lawyer” reference meant Bergida first, with Martino as an alternate counsel. The record is bereft of credible evidence supporting the view that defendant regarded Martino as his counsel or ever intended to seek his advice.

. Defendant does not claim that Bergida received or made a request for access to defendant for any purpose from the time of their arrest at 2:05 a.m. until the breathalyzer test request at 3:27 a.m.

. This is not a case where the police took affirmative steps to deny defendant’s request for an attorney. (Cf., Matter of Finocchairo v Kelly, 11 NY2d 58 [1962] [police denied defendant’s request for permission to telephone his lawyer before deciding to submit to a sobriety test]; People v Iannopollo, 131 Misc 2d 15 [Ontario County Ct 1983] [police deprived defendant of effective counsel by denying him a private telephone consultation with his attorney]; People v Stone, 128 Misc 2d 1009 [Crim Ct, Richmond County 1985] [police refusal to permit defendant use of the telephone in order to obtain legal counsel, one hour prior to the expiration of the two-hour time limit, thus violating defendant’s right of access to counsel]; People v Rinaldi, 107 Misc 2d 916 [Town Ct, Monroe County 1981] [police refused defendant access to a nearby pay telephone to contact his lawyer]; People v Sweeney, 55 Misc 2d 793 [Dist Ct, Suffolk County 1968] [police refused to allow defendant to consult by telephone with his attorney prior to a breathalyzer test being administered].)