OPINION OF THE COURT
Kenneth R. Fisher, J.
Charged with felony driving while intoxicated (DWI) alleg *288 edly committed while hitting a parked car and thereafter speeding off to a nearby parking lot, defendant moves to suppress evidence of his statements made at the scene of the arrest, together with the field test results and refusal to take a chemical breath test, on the ground that there was no probable cause, nor even reasonable suspicion, to detain or arrest him, and on the further ground that he was not advised of this Miranda rights before making statements to the police. Defendant also contends that he was not given the Commissioner’s warnings prior to the time he refused to take the chemical test and that he requested to consult with a lawyer prior to making his decision whether to submit to the breath test. A combined probable cause/Huntley and chemical test refusal hearing was held, and the following is the court’s decision and order denying the motions to suppress.
Brandon Jacob, having witnessed defendant’s pickup truck strike his parked car on Monticello Street in the City of Rochester, at about 12:10 a.m. on October 1, 1999, and having notified the police by 911 cell phone call of the accident, and having taken chase after defendant’s truck, and having arrived at the Tryon Estates apartment building parking lot at about the time defendant’s pickup truck gained a parking spot in the rear of the lot, testified that he led the police to defendant’s truck when the police arrived almost simultaneously. Jacob pointed out the defendant to them. After preliminary inquiry [deleted for purposes of publication], the police made a formal DWI arrest at 1:35 a.m., and handcuffed the defendant. Defendant was put in the backseat of a squad car.
At 1:37 a.m., Rochester Police Officer Richard Arrowood read the Commissioner’s warnings to the defendant from a “refusal form” marked and introduced into evidence as exhibit No. 5. He read these verbatim to the defendant, and upon my examination of the form it contains all of the required Commissioner’s warnings. (Vehicle and Traffic Law § 1194 [2] [b] [1].) When asked if he understood the warnings, defendant said, “Absolutely.” Arrowood then asked defendant to submit to a breath test. Defendant replied that he wanted to talk to a lawyer. Arrowood said he had no phone, but the defendant said that he had a telephone in his truck. Arrowood then went to the truck and retrieved the cell phone for the defendant. Defendant said he knew the number, relayed it to Arrowood, and Arrowood dialed the number for the defendant. The person answering on the other end of the line was not defendant’s at *289 torney. Instead, it was one of the defendant’s “in-laws.” Arrowood’s partner, Officer Jorge, explained the circumstances to the “in-laws,” and then ended the cell phone transmission.
Defendant was then transported to the Monroe County Sheriff’s Department STAR van, which was located some distance away on Mt. Read. During the transport there was some idle conversation. At 2:23 a.m., nearly an hour after the arrest, the defendant was given the Commissioner’s warnings a second time, from the same form, exhibit No. 5. Defendant stated that he understood the warnings, but this time the defendant had a question for the officer. He asked Arrowood if, in Arrowood’s opinion, he was intoxicated. Arrowood replied, “Yeah,” and added, “So are you going to submit to a test?” Defendant replied, “Absolutely not.” Arrowood testified that he did not give the Miranda warnings to the defendant because the defendant had already requested an attorney.
Deputy Kevin David Bubel, of the Monroe County Sheriff’s Department, testified that he was operating the STAR van that night. He observed the defendant in custody when brought by Rochester Police Department officers for a breath test. Bubel witnessed the second administration of Commissioner’s warnings to the defendant, and defendant’s refusal to take the breath test. He observed that the defendant had a strong odor of alcohol on his breath and glassy eyes.
Discussion
[Those portions of the opinion denying the motion to suppress, insofar as it concerns the reasonable suspicion and probable cause issues, and the motion to suppress the statements defendant made at the scene, are deleted for publication.]
The motion to suppress the refusal is also denied. Although the defendant was given the required Commissioner’s warnings of the consequences of the refusal (Vehicle and Traffic Law § 1194 [2]), he asked for a lawyer in connection with the officer’s request of defendant to take the test. A defendant has the right to consult with an attorney before deciding whether to take a chemical test. (People v Gursey, 22 NY2d 224, 228 [1968] [“denial of defendant’s requests for an opportunity to telephone his lawyer must be deemed to have violated his privilege of access to counsel”] [emphasis supplied].) The police made an effort to comply with the request, which failed because defendant gave the officers the wrong information. Whether this effort was sufficient is the question before the court.
In Gursey, the Court held that this “privilege of access” does not mean that a suspect has an “absolute right to refuse the *290 test until a lawyer reaches the scene.” (People v Gursey, 22 NY2d, supra, at 229.) “Where the defendant wishes only to telephone his lawyer or consult with a lawyer present in the station house or immediately available there, no danger of delay is posed” which might “nullify the statutory procedure requiring drivers to choose” between taking the test, and a license suspension. (Supra, 22 NY2d, at 229.) On the other hand, “[i]f the lawyer is not physically present and cannot be reached promptly by telephone or otherwise, the defendant may be required to elect between taking the test and submitting to revocation of his license, without the aid of counsel.” (Supra, 22 NY2d, at 229; see also, People v DePonceau, 275 AD2d 994 [4th Dept 2000].) Where a defendant requests “a named attorney’ at a “late hour,” it has been held that reasonable and sufficient efforts to contact that attorney twice, unsuccessfully, sufficiently discharges law enforcement’s obligation to honor the request, and renders the uncounseled choice defendant made shortly thereafter, to refuse the test, admissible. (Id.; see also, People v O’Rama, 78 NY2d 270, 280 [1991] [a police officer’s statement to a defendant “that his insistence on waiting for his attorney constituted a refusal” under the statute was accurate “(w)hen viewed in the context of defendant’s statement to police that his attorney could not be contacted for several hours” — defendant held to have been “afforded an adequate opportunity to consult with counsel”] [emphasis supplied]; People v Kearney, 261 AD2d 638 [2d Dept 1999] [finding the officer’s efforts to contact the defendant’s attorney “reasonable and sufficient” without describing what those efforts were or at what time].)
Here, the testimony was that the police facilitated the call from the scene of the arrest with a cell phone which defendant directed Officer Arrowood to in the pickup truck. Although the record does not reveal whether defendant gave Arrowood the name of his attorney, a matter evidently found important in People v DePonceau (supra), defendant said that he knew the phone number of his attorney, and when he gave Arrowood the number it was dialed for him. When the “in-laws” answered, Officer Jorge, who (it may be inferred from the testimony) handled the call, explained the circumstances to the “in-laws” and hung up. Nothing more was elicited on the question in the hearing testimony. Defendant did not testify.
The cases on this judicially created “privilege of access” to a lawyer in this context do not specify upon which party the burden of proof lies or what standard of proof must be applied *291 by a hearing court. In another context, involving application of the State constitutional right to counsel under People v Rogers (48 NY2d 167 [1979]), the Court held that “placing the burden of proof on the defendant in numerous contexts collateral to the question of guilt has long been upheld.” (People v Rosa, 65 NY2d 380, 387 [1985].) The Gursey “privilege of access” at issue here does not concern the question of guilt or innocence, but rather is a prophylaxis assisting the “qualified” right to refuse the test, which, when invoked properly, ensures a defendant’s informed choice whether to exercise an “entirely statutory” right to chose between a license suspension and submitting to a “search” of his breath or blood for evidence of blood alcohol content (People v Shaw, 72 NY2d 1032 [1988]) that otherwise defendant had no constitutional right to prevent. (People v Thomas, 46 NY2d 100, 109 [1978].) This “qualified” statutory right (supra, 46 NY2d, at 109) does not involve a constitutional right to counsel, nor even is it a prophylactic measure to assure a reviewing court that other constitutional rights will be observed by the police. (People v Shaw, 72 NY2d, at 1033 [“defendant has no constitutional right to refuse to consent to such a search”].)
Accordingly, the court believes that, after the People come forward at the hearing to show the legality of police conduct in the first instance, which is required by the statute, Vehicle and Traffic Law § 1194 (2) (f) (admissibility conditioned “upon a showing” that the warnings were administered), if defendant makes a claim that he was not “afforded an adequate opportunity to consult with counsel” (People v O’Rama, 78 NY2d, supra, at 280), or that the efforts of the police were not “reasonable and sufficient under the circumstances” (People v Kearney, 261 AD2d 638, supra), it is the defendant’s burden to establish such a claim at the hearing. (Cf. People v Rosa, 65 NY2d, supra, at 387; People v Curley, 122 AD2d 67 [2d Dept 1986].) This is fair because the defendant will be in the superior position to adduce proof of his counsel’s availability in the circumstances, and of the most ready means of accessing his client. Given that the police generally do not, for legitimate security reasons, let suspects make unmonitored telephone calls from the scene of an arrest, the police must rely on information given to them by the defendant to adequately facilitate access to counsel. Requiring a defendant to adduce proof of counsel’s availability, the means of access, and whether that information was adequately conveyed to the police is eminently fair. (Cf., People v Rosa, 65 NY2d, at 386.)
*292 In this case, there is proof that defendant gave the police what he represented to them was the number of his attorney, and there is proof that the number in question was to a family telephone. There was no evidence concerning what, if anything, was said between defendant and the police after Officer Jorge concluded the conversation with the “in-laws.” On this record, it cannot be said that defendant sustained his burden of proving that more in the way of access to counsel was demanded of the police, or was in fact desired by him after that initial call. (People v Curley, supra.) Nor has defendant established that the police had any more information in their possession from which they might have continued a further “reasonable and sufficient” effort to contact an attorney. Therefore, on the state of the existing record, the court finds that defendant was afforded an adequate opportunity to consult with counsel.* The statute was otherwise complied with prior to the refusal. (Vehicle and Traffic Law § 1194 [2] [f]; People v Gangale, 249 AD2d 413, 413-414 [2d Dept 1998].) Accordingly, the motion to suppress the refusal is denied.
Conclusion
The various motions to suppress are denied as more particularly set forth above.
[Portions of opinion deleted for purposes of publication.]

 To hold otherwise would be tantamount to expanding the Gursey privilege of access to a “right” ensuring access, or at least a right to require the police to exhaust all avenues of access conceivable to them. No case holds that a blanket request for an unnamed lawyer, without the provision of any information to the police on the means of access, would require the police, on their own, to find counsel for the suspect. (Cf., People v Cole, 178 Misc 2d 166, 168-169 [Brighton Town Ct 1998].) Gursey (supra) does not require the police to maintain standby counsel for arrestees, either for blood tests administered in the field or at the station house, nor does invocation of the Gursey privilege of access require the police to provide appointed counsel for the suspect who cannot afford counsel for the purpose. (Cf., People v Isaac, 224 AD2d 993, 994 [4th Dept 1996].) The Gursey rule protects an existing lawyer-client relationship (short of the indelible attachment variety), that is, one in which a lawyer and client have enough of a relationship with one another that the former will take a late night or other hurried call from the latter and give immediate advice. Gursey does not guarantee the creation of a new attorney-client relationship in the hurried circumstances of an on-the-scene DWI arrest.