People v McCray (2024 NY Slip Op 50760(U))

[*1]

People v McCray

2024 NY Slip Op 50760(U)

Decided on June 24, 2024

Criminal Court Of The City Of New York, Bronx County

Bowen, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 24, 2024
Criminal Court of the City of New York, Bronx County

The People of the State of New York

against
Donte T. McCray, Defendant.

Docket No. CR-023814-23BX

Andreinna Marmolejos, Assistant District Attorney, Bronx County, for the People 
Grace Powell, The Bronx Defenders, for Defendant

E. Deronn Bowen, J.

Summary
1. Holding: The redactions made to two Internal Affairs Bureau logs without court preapproval were statutorily permissible (see CPL 245.10 [1] [a] [iv] [a]).
2. Holding: The good-faith failure to serve and file a supplemental certificate of compliance that would implicate Occam's razor is not a strict-liability error mandating the automatic invalidation of the initial certificate of compliance (CoC).
3. The defense motion to deem invalid the People's initial CoC dated January 9, 2024, is DENIED.
4. The defense motion to dismiss the information on statutory speedy trial grounds is DENIED, as 72 days are chargeable in this matter.
5. The defense motion to suppress the fruits of defendant's observation, seizure and arrest is GRANTED TO THE EXTENT OF ORDERING the following pre-trial hearings: Dunaway/Huntley/Mapp.
6. Sandoval and Molineux matters are RESERVED to the trial court for resolution.
7. All other branches of the defense consolidated omnibus motion are DENIED.
8. Service and filing of a defense CoC is ORDERED by July 12, 2024.
9. This matter is adjourned to July 16, 2024, for hearings and trial.
I. Background
Defendant, Donte T. McCray, stands charged in an information with per se driving while intoxicated (Vehicle and Traffic Law § 1192 [2]); common-law driving while intoxicated (Vehicle and Traffic Law § 1192 [3]); aggravated unlicensed operation of a motor vehicle in the second degree (Vehicle and Traffic Law § 511 [2] [a] [iv]); aggravated unlicensed operation of a motor vehicle in the third degree (Vehicle and Traffic Law § 511 [1] [a]); driving while ability [*2]impaired by alcohol (Vehicle and Traffic Law § 1192 [1]); and unlicensed operation of a motor vehicle (Vehicle and Traffic Law § 509]). Defendant was arraigned on October 29, 2023. The People served and filed a certificate of compliance (CoC) for the first time on January 9, 2024 (see CPL 245.50 [1]). During the parties' private discovery conferencing (see CPL 245.35 [1]), the People provided additional discovery. The People also served and filed a supplemental CoC (SCoC) on each of January 31 and February 14, 2024 (see CPL 245.50 [1]).[FN1]
A statement of readiness (SoR) accompanied the CoC and each SCoC (see CPL 245.50 [3]).
The parties continued with their CPL 245.35 (1) conferencing until March 5, 2024, when they brought their remaining disagreements before the court for resolution (see CPL 245.35 [2]). After extensive argument, the court ordered the People to turn over certain discovery material to the defense and set an excludable adjournment to March 15, 2024, to provide the People with a reasonable time to comply with its orders (see CPL 245.70 [2]).
On March 6, 2024, the day after CPL 245.35 (2) conferencing took place, the People served additional discovery upon the defense, and served and filed a third SCoC, along with another SoR. On March 15, 2024, the last day of the compliance grace period, the People turned over to the defense the remaining court-ordered discovery material. No SCoC was served and filed attendant with this discovery disclosure. Also on March 15, 2024, the instant motion schedule was set; this matter has since been in motion practice.
II. Analysis
A. CPL 245 Discovery Compliance
In a branch of a consolidated omnibus motion dated April 10, 2024,[FN2]
defendant asks the court to invalidate the People's initial CoC dated January 9, 2024, on due diligence grounds. The People, in responsive papers dated May 6, 2024, oppose the defense request. The defense reinforces its perspective in reply papers filed and served on May 17, 2024. The court will first address the purported discovery lapses that, defendant submits, militates against a finding of CoC validity. The court will then give "a holistic assessment of the People's efforts to comply with the automatic discovery provisions" (People v Cooperman, 225 AD3d 1216, 1220 [2024]).
1. Breathalyzer Calibration Reports
It is undisputed that the People failed to include with the pre-CoC discovery turned over to the defense any of the calibration, gas chromatography, simulator solution and related reports/documentation (collectively "calibration reports") for the breathalyzer instrument used to test defendant's blood alcohol content (BAC). It is also undisputed that the People provided a large portion of the calibration reports on January 31, 2024, one day after defendant notified them by email dated January 30, 2024, that the reports were missing (see CPL 245.50 [4] [b] ["To the extent that the party is aware of a potential defect or deficiency related to a certificate of compliance or supplemental certificate of compliance, the party entitled to disclosure shall notify or alert the opposing party as soon as practicable"]).
The People explained in the accompanying SCoC that they "believed this material had been included in our prior production. Once we learned that it was missing from that production, we promptly disclosed it to defendant." Nonetheless, due to the oversight in the first instance, defendant submits in the consolidated omnibus that the People's discovery-compliance efforts fell "short of demonstrating due diligence . . . particularly given the volume of material outstanding at the time the original certificate of compliance was filed, and the fact that the reliability of the [breathalyzer] test results will be of crucial importance at a hearing or trial."
In their responsive papers the People again "concede[ ] that they did not disclose calibration reports at the time of filing the COC because of an oversight." The People also point out that the court has previously "refrained from invalidating the People's COC due to the People's 'admitted goof that was fully corrected mere minutes after the defendant' " notified the People of the error (quoting People v Jerez, 80 Misc 3d 1238[A], 2023 NY Slip Op 51195[U], *2 [Crim Ct, Bronx County 2023]). Here, the People made prompt correction within a day of being informed of the oversight. The shared defense concern here and in Jerez, "that the missing discovery was not produced until after defense counsel alerted the prosecution to the fact that the material was missing[,] overlooks the fact that the State Legislature designed the discovery statute to include this failsafe" (id. [internal quotation marks omitted]; see CPL 245.50 [4] [b]).
The defense reply commentary—that "conspicuously absent from both the prosecution's supplemental certificate of compliance and [responsive papers] are details of specific efforts made to ensure those materials were disclosed prior to the date the original certificate of compliance was filed"—is unpersuasive. Human oversight led to the inadvertent omission of the calibration reports from the pre-CoC, electronic data turned over to the defense. This relatable and unremarkable occurrence is not, in and of itself, necessarily indicative of mal-intent or a lack of holistic due diligence (see People v Bay, 41 NY3d 200, 212 [2023] ["relevant factors for assessing due diligence . . . [include] the explanation for any discovery lapse[ ] and the People's response when apprised of any missing discovery"]; People v Deas, 226 AD3d 823, 826 [2024] ["[T]he People's failure to disclose the [discovery] in a timely fashion was inadvertent and without bad faith or a lack of due diligence. Moreover, there is no indication that the People had otherwise knowingly attempted to delay the trial. The People took sufficient and immediate steps to provide the [discovery] to the defendant once they were made aware of its existence"]).[FN3]

2. NYPD Internal Affairs Bureau Logs
Among the pre-CoC discovery served on the defense were two NYPD Internal Affairs Bureau (IAB) logs that contained redactions over which the parties wrangled throughout their CPL 245.35 (1) conferencing. It was not until the CPL 245.35 (2) conference that the court resolved the redaction contretemps by ordering the People to turn over the unredacted logs, to which the People complied within the court-imposed deadline.
a. Redactions
The defense now proffers that, because of the initial, "overbroad redactions," the court should find that "the prosecution did not actually comply with its obligations to disclose all impeachment material for testifying law enforcement witnesses" prior to serving and filing the CoC. The defense reply papers explain further.
"[T]he prosecution may not unilaterally redact discoverable material without permission from a court. . . . To the extent that the prosecution felt it was necessary or appropriate to make redactions beyond those permitted by statute . . . it could simply have sought a protective order from this Court prior to filing its original certificate of compliance. By electing instead to merely disclose the improperly redacted records without seeking an order, however, the prosecution failed to exercise due diligence in accordance with the requirements of Article 245."
The court disagrees and declines to adopt the defense position mandating court authorization for all redactions to purported discovery in all cases prior to filing a CoC. Such a rule would contravene the discovery statute design. In New York State criminal proceedings there is a shared duty by "the prosecutor and counsel for the defendant [to] diligently confer to attempt to reach an accommodation as to any dispute concerning discovery prior to seeking a ruling from the court" (CPL 245.35 [1] [emphasis added]). The Legislature expressly intends the parties to first confer privately over all discovery disagreements. Only in the (rare) instances that the parties cannot, during CPL 245.35 (1) conferencing, reach agreement on reasonable accommodations should the parties request a CPL 245.35 (2) conference with the court or its staff to address the (again, rare) intractable discovery disputes.[FN4]

This sequentiality is widely observed in practice. This court, like New York State courts of criminal jurisdiction broadly, typically refuses to interject itself into parties' good-faith CPL 245.35 (1) conferencing, particularly prior to CoC service and filing. Had the People moved for a pre-CoC protective order here, based upon the record the court invariably would have found that there existed
"no basis, at this juncture, to become involved in what assuredly is the People's initial [discovery] obligation. If, after the People review these materials, and further assuming the parties cannot agree after diligently conferring in attempting to reach an accommodation about this discovery dispute, the parties may then seek a ruling from the Court" (People v Johnson, 70 Misc 3d 1205[A], 2021 NY Slip Op 50004[U], *1 [Albany County Court 2021], citing CPL 245.35 [1]).
Even after a CoC is served and filed, and the defense registers a CoC-validity challenge, New York courts may order the parties to reengage in further, private CPL 245.35 (1) conferencing (see e.g. People v Lustig, 68 Misc 3d 234, 237 [Sup Ct, Queens County 2020]).
If the strictures of CPL 245.10 (1) (a) (iv) (A) are heeded, then "[p]ortions of materials claimed to be non-discoverable may be withheld pending a determination and ruling of the court under section 245.70" (id.). Nowhere does the discovery statute require prior court authorization [*3]for pre-CoC redactions made by either party in conformity with CPL 245.10 (1) (a) (iv) (A). Indeed, the statute does not mandate even that a party apply for a protective order from the court before executing a pre-CoC withholding. A protective order application may be made after CPL 245.35 (1) conferencing if the parties cannot reach a reasonable accommodation on their own over any withholding disagreement. Later, court-ordered disclosure does not render the pre-CoC redactions impermissible if they were made in conformity with CPL 245.10 (1) (a) (iv) (A). Reading the discovery statute as defendant wishes would create an internal inconsistency by mandating prior court authorization to withhold "[p]ortions of materials claimed to be non-discoverable . . . pending a [later] determination and ruling of the court" (id.). For these reasons, the court declines the defense invitation to prematurely insert protective order motion practice into the parties' private CPL 245.35 (1) conferencing.
To be clear, the court is notdeclaring that, in all criminal matters, the People are free to redact discoverable material to their hearts' content unless and until a court rules or orders otherwise. Yet, there certainly are situations in which a reasonable argument can be made for the appropriateness of pre-CoC redactions to otherwise discoverable material. On the other hand, suppose that, throughout CPL 245.35 (1) conferencing, the People were to insist that redactions made to otherwise discoverable material were proper and concerned information unrelated to the prosecution, only for later-shared, unredacted material to reveal itself to have, in fact, been plainly discoverable. This would necessarily mean that the People would be in noncompliance with the obligation to ensure when making redactions that "the discoverable portions of such materials shall be disclosed to the extent practicable" (CPL 245.10 [1] [a] [iv] [A]). As a consequence, the People may well face CoC-invalidation or discovery sanctions (see e.g. People v Tavares, 81 Misc 3d 1245[A], 2024 NY Slip Op 50156[U], *4 [Crim Ct, Bronx County 2024] [Redacted information in an IAB log for "the eyewitness arresting officer whose observations and attestation are the basis for the People lodging multiple DWI charges against defendant in the instant matter[,] include[ ] allegations that on a previous occasion an investigatory determination by [the same officer] that an individual was 'ok' was called into direct question by other NYPD officers who described the same individual as 'driving very drunk.' The court cannot agree with the People's assertion that the [redacted] allegations of this IAB log 'do[ ] not relate to the subject matter of this case,' a DWI prosecution initiated by [the arresting officer's] accusation that defendant was intoxicated"]).
Prosecutors must be extremely cautious and objective when deciding whether to withhold potentially discoverable material pursuant to CPL 245.10 (1) (a) (iv) (A). To invoke the withholding privilege, a prosecutor must be able to articulate a reasonable basis therefor despite the statutory "presumption in favor of disclosure" (CPL 245.20 [7]). The People's reasoning does not have to ultimately "win the day" in court. However, "[s]hould a defendant bring a CPL 30.30 motion to dismiss on the ground that the People failed to exercise due diligence and therefore improperly filed a COC," the People must be able to demonstrate that good faith, due diligence and reasonableness guided the redaction decisions made, as part of meeting "the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" (Bay, 41 NY3d at 213). "Thus, a prosecutor who fails to engage in 'open file' discovery (except for 'work product' and information subject to a protective mandate of a statute or court order) may do so at his or her professional peril while also jeopardizing the viability of a prosecution" (William C. Donnino, Prac Commentaries, McKinney's Cons Laws of NY, CPL 245.10 [Note: online version]).
In the instant matter, at the time of CoC service and filing, and throughout CPL 245.35 (1) conferencing, the defense was on notice of the People's position that the redacted IAB logs already shared satisfied their discovery obligations. During CPL 245.35 (2) conferencing, the People's arguments in support of the redactions, though ultimately unsuccessful, were not frivolous or unfounded. After the court ordered that the unredacted logs be turned over, the People complied timely. Importantly, despite having been in receipt of the unredacted IAB logs since March 15, 2024, defendant makes no claim in the consolidated omnibus that the People knew or should have known that any of the pre-CoC redactions were improper. Accordingly, as the People are in compliance with CPL 245.10 (1) (a) (iv) (A), the court HOLDS that the pre-CoC redactions were statutorily permissible.
b. Failure to Serve and File a Supplemental Certificate of Compliance
The due-diligence question respecting the subject IAB logs has an added wrinkle. The People neglected to serve and file an SCoC attendant with the timely service of the unredacted IAB logs on March 15, 2024. Defendant insists in the consolidated omnibus that,
"in addition to violating the plain requirements of C.P.L. § 245.50(1), that failure to file a supplemental certificate of compliance detailing the basis for the delayed disclosure of those records undermines any claim that the prosecution has met its burden to show that its original certificate of compliance should be deemed valid despite its discovery omissions."
The defense point of view is not unpersuasive. The discovery statute is clear: "If additional discovery is subsequently provided prior to trial . . . , a supplemental certificate shall be served upon the defendant and filed with the court identifying the additional material and information provided" (CPL 245.50 [1]; see Bay, 41 NY3d at 209 ["CPL 245.60 imposes a continuing duty to disclose, and when the People provide discovery after a COC has been filed, they must file a supplemental COC"], citing CPL 245.50 [1]). Furthermore, an SCoC "shall detail the basis for the delayed disclosure so that the court may determine whether the delayed disclosure impacts the propriety of the certificate of compliance" (CPL 245.50 [1-a]). Therefore, generally, "failure to file the supplemental COC impacts the original COC because good faith and due diligence can't be demonstrated" (People v Markovtsii, 81 Misc 3d 225, 229 [Crim Ct, Kings County 2023]).
Yet, the no-SCoC "wrinkle" in this matter has a wrinkle of its own. The People admit in their responsive papers that the assigned prosecutor was out of the office when "the unredacted logs were turned over and did not remember to file and serve a supplemental COC and SOR to enumerate such disclosure when she returned."[FN5]
This "failure," the People continue,
"should not invalidate the People's COC . . . as the People had already turned over the IAB Logs in one form. The defendant was in possession of these [redacted] logs since January 19, 2024 and as such the People were ordered to turn over the complete unredacted version of the same logs, which they did within the period given by the [*4]court."
This counterargument is not frivolous since the defense and the court have been on clear notice throughout these proceedings of the status of the IAB logs.
As the Court of Appeals has
"repeatedly recognized in matters of statutory . . . interpretation, legislative intent is the great and controlling principle, and the proper judicial function is to discern and apply the will of the [Legislature]. To that end, ascertaining legislative intent involves considering the spirit and purpose of the act and the objects to be accomplished" (Matter of Sedacca v Mangano, 18 NY3d 609, 615 [2012] [internal quotation marks omitted]; see Bay, 41 NY3d at 211 ["In resolving questions of statutory interpretation, our primary consideration . . . is to ascertain and give effect to the intention of the Legislature"] [internal quotation marks omitted]).
The legislative "spirit and purpose" behind the SCoC requirement needs no divination. An SCoC "shall detail the basis for the delayed disclosure so that the court may determine whether the delayed disclosure impacts the propriety of the certificate of compliance" (CPL 245.50 [1-a] [emphasis added]; see People v Amissah, 79 Misc 3d 401, 408 [Crim Ct, Bronx County 2023] ["the SCOC . . . enable[s] the court to make a determination of the People's exercise of good faith and due diligence in fulfilling their duties under CPL § 245.20 (1)"]).
"Under the terms of the [discovery] statute, the key question in determining if a proper COC has been filed is whether the prosecution has 'exercis[ed] due diligence and ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery' " (Bay, 41 NY3d at 211, quoting CPL 245.50 [1]). Pursuant to the legislative "spirit and purpose" of the SCoC requirement, the court HOLDS that the good-faith failure to serve and file an SCoC that implicates Occam's razor is not a strict-liability cause for automatic CoC-invalidation. I.e., the court HOLDS that, if an SCoC would provide no material, previously unknown information relevant to gauging a party's discovery due diligence, then the good-faith failure to serve and file one does not mandate per se the invalidation of the preceding CoC. However, the failure and its cause(s) should be given the appropriate weight in evaluating the offending party's holistic discovery due diligence or sanctions.
Here, again, the defense and the court have consistently been on notice about the People's relevant activities surrounding the subject IAB logs. The court can conceive of no new information an SCoC would have provided relevant to gauging the People's due diligence beyond what was already known to both parties and the court as of March 15, 2024. Indeed, the court already has already determined, upon review of the case record, that the IAB log redactions were not made in violation of the People's obligations of good faith and reasonableness (see ante). Accordingly, the court declines to invalidate the People's initial CoC for the failure to serve and file, attendant with the unredacted IAB logs, what would have been an analytically meaningless SCoC.
3. Miscellaneous Discovery Material
The well-crafted interplay of CPL sections 245.10, 245.35, 245.50 and 245.70 applies to all discovery matters. Respecting the calibration reports and the IAB log redactions, as already discussed, both parties acted consistently, if imperfectly, in accord with the statutory scheme. As a third case study, we consider the parties' dispute over various Giglio material for a named NYPD police officer A.M. Per the consolidated omnibus motion,
"[a]fter reviewing the discovery shared in this case, and based on Officer [A.M.]'s role in [*5][defendant]'s arrest, [the defense] on January 30, 2024 requested material discoverable pursuant to C.P.L. § 245.20(1)(k) for that officer. In response to that request, the prosecution replied only that it did not intend to call Officer [A.M.] as a testifying witness, and therefore would not be disclosing impeachment material for him."
To rephrase, the defense, upon review of the initial batch of discovery material, notified the People that purportedly discoverable, Giglio material for Officer A.M. was absent (CPL 245.50 [4] [b]). The People provided explicit counter-notice of their position that Officer A.M.'s designation as nontestifying rendered the material nondiscoverable, thus entitling them to withhold it (CPL 245.10 [1] [a] [iv] [A]). 
Defendant explains that the People's non-discoverability point of view could not be "accommodat[ed]" (CPL 245.35 [1]) because these are "misconduct records for [Officer A.M.] who played a central role in deciding to effectuate an arrest" of defendant in this matter.
"Instead, however, the prosecution refused to disclose that material based solely on its own reading of C.P.L. § 245.20(1)(k), and disclosed that material only after it was explicitly ordered to do so by this Court. Moreover, in a supplemental certificate of compliance disclosed along with those materials, the prosecution provided only: '[t]he People did not disclose this material as they do not intend to call [Officer A.M.] as a witness in their case, however as per orders by the Honorable Judge Bowen, the People were ordered to disclose Giglio material for [Officer A.M.].' "
Rephrasing continued (with added, objective exposition): The parties brought this dispute to this court (CPL 245.35 [2]), before which the People argued nonfrivolously that the Giglio material was not discoverable as a matter of law (see Cooperman, 225 AD3d at 1219 ["The law enforcement disciplinary records at issue pertained to individuals who the People indicated would not be testifying at trial. Thus, those records were not subject to automatic discovery"]). The People also presented nonfrivolous, though unpersuasive, responses to defendant's alternate arguments for discoverability. The court, for reasons outside of the automatic discovery statute (CPL 245.20 [1]), deemed discoverable certain Giglio material for Officer A.M. (CPL 245.20 [1]), which the People then timely turned over to the defense.
The defense description of this Giglio dispute, contrary to the conclusion reached in the consolidated omnibus, reads as a fairly textbook example of a discovery-compliance issue being addressed in accordance with the statutory order—from the absence/withholding of material; to cross-notices thereof; to private, good-faith conferencing; to the parties bringing a (rare!) intractable discovery issue to a court for resolution; to the timely compliance with subsequent court orders. The court agrees with the defense that the People likely could have provided explicit CPL 245.10 (1) (a) (iv) (A) notice of withholding more promptly. The suggestion that the People lacked a CoC-invalidating degree of due diligence on this point, however, has a distinct "mountain out of a molehill" vibe to it. The further defense assertion that the People "could have sought a court order permitting it to withhold that material prior to filing its [sic] original certificate of compliance" is again rejected, as pre-CoC filing is typically not an appropriate time to invite court intrusion into the parties' CPL 245.35 (1) conferencing (see ante).
Other due-diligence complaints presented in the consolidated omnibus motion (e.g., CCRB documentation, NYPD activity logs), like the examples previously discussed, also illustrate both parties acting in accordance with the discovery statutory order. While, again, the People's compliance was in no way 100% flaw-free, defendant's due-diligence protestations [*6]come off as overblown, at best.
4. "Holisitic Assessment" of the People's Discovery Due Diligence
"In Bay, the Court of Appeals made clear that whether the People exercised due diligence is not to be examined in a vacuum. To that end, the non-exclusive list of factors articulated by the Court in that case calls for a holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test that would require us to conclude that a COC is improper if the People miss even one item of discovery" (Cooperman, 225 AD3d at 1220; see Bay, 41 NY3d at 212).
As discussed, the People's overall discovery compliance in this matter was far from mistake-free. This is, frankly, unsurprising. CPL article 245 places a significant burden on District Attorney Offices. It would be a near impossibility for even the most patently perfect prosecutor to navigate error-free the diverse discovery dictates of CPL article 245 (see People v Preston, 70 Misc 3d 355, 357 [Cohoes City Ct 2020] ["CPL 245.20 (1) lists several categories of items that are to be disclosed. However, disclosure is not limited to items contained within these categories and thus incumbers the prosecution with a greater discovery burden"] [citations omitted]). For this reason, the Legislature wisely imposed "no rule of 'strict liability'; that is, the [discovery] statute does not require or anticipate a 'perfect prosecutor' " (Bay, 41 NY3d at 212; see People v Vaillant, 80 Misc 3d 856, 870 [Crim Ct, Bronx County 2023] [" 'flawless' perfection is not the proper standard against which to judge the People's discovery compliance"]).
Taking into account "the relevant factors for assessing due diligence" (Bay, 41 NY3d at 212)—such as,
"among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (id.)—
the court finds that, holistically, the People exhibited due diligence, good faith and reasonableness in their overall discovery-compliance efforts appurtenant with this matter. That the explanations given for the People's admitted shortcomings fail to satisfy the oft hyper-specific and hyper-technical demands of the defense does not constitute a reasonable basis to invalidate the initial CoC. Accordingly, the branch of the consolidated omnibus motion seeking CoC invalidation on due diligence grounds is DENIED. The People's CoC dated January 9, 2024, is DEEMED VALID.
To reiterate, "in matters of statutory . . . interpretation, legislative intent is the great and controlling principle, and the proper judicial function is to discern and apply the will of the [Legislature]. To that end, ascertaining legislative intent involves considering the spirit and purpose of the act and the objects to be accomplished" (Sedacca, 18 NY3d at 615 [internal quotation marks omitted]). Neither the court's reading of CPL article 245, nor a review of its legislative history, reveals the State Legislature as having intended the discovery statute to serve as a prosecutorial obstacle course of Navy SEAL Hell Week proportions, where even the most minor of slip-ups, oversights, errors and delays are grounds for immediate CoC invalidation. Yet, the proportion of omnibus motions that include applications for CoC- and SCoC-invalidation betrays the defense bar's generally overly rose-tinted view of the discovery statute. [*7]While CPL article 245 certainly is a stark "improvement" for criminal defendants, as compared with its predecessor, CPL article 240, the fact remains that, contrary to the apparent defense-bar perception, CPL article 245 is not just a collection of prosecutorial obligations. The discovery statute's interlocking provisions place clear duties upon both partiesto approach discovery disputes with mutual good-faith, accommodation, reasonableness and "due diligence," which is "a familiar and flexible standard that requires the [parties] to make reasonable efforts to comply with statutory directives" (Bay, 41 NY3d at 211).[FN6]

B. Statutory Speedy Trial
The consolidation omnibus application to dismiss the information on statutory speedy trial grounds is DENIED. As the People's initial CoC is valid, and no other basis for questioning the associated SoR served and filed on January 9, 2024, has been present, it, too, is valid. Therefore, the 72-day period from October 30, 2023, the day after defendant's arraignment, through and including January 9, 2024, is chargeable (see General Construction Law § 20; People v Stiles, 70 NY2d 765, 767 [1987]; People v DiMeglio, 294 AD2d 239, 239-240 [2002]). All time from January 9, 2024, through the date of this decision and order is excludable due to CPL 245.35 (1) conferencing, court-excluded discovery compliance and motion practice (see CPL 30.30 [4] [a]). Thus, the total chargeable time (72 days) is less than the People's 90-day statutory "clock" (CPL 30.30 [1] [b]), rendering unavailing the defense application to dismissal on statutory speedy trial grounds. 
C. Remaining Consolidated Omnibus Motion Branches
The branches of the omnibus motion seeking suppression of the fruits of defendant's observation, seizure and arrest are GRANTED TO THE EXTENT OF ORDERING the following hearings: Dunaway/Huntley/Mapp. All other branches seeking suppression or, alternatively, hearings are DENIED as duplicative of hearing requests herein granted or unsupported by the defense arguments and the record.
In particular, the branch of the omnibus motion effectively moving for Atkins/Gursey hearings is DENIED. The bareboned declaration that the "chemical breath test was performed in violation of [defendant's] limited right to consult with counsel before deciding whether to consent to chemical testing" is insufficient to grant a hearing. Defendant does not sufficiently allege any of the three points necessary to obtain Gursey suppression, or a hearing thereon, i.e., that "such a request" for counsel was made; that counsel was "physically present [or could] be reached promptly by telephone or otherwise" at the time of the request; and that it was "feasible for the police to allow defendant to attempt to reach counsel without unduly delaying administration of the chemical test" (People v Smith, 18 NY3d 544, 549 [2012]; see People v Gursey, 22 NY2d 224 [1968]). Likewise, the perfunctory, unsupported attestation that the "chemical breath test was performed without [defendant's] voluntary consent" is insufficient to grant suppression or a hearing thereon.
Sandoval and Molineux motions are RESERVED to the trial court for resolution (see People v Sandoval, 34 NY2d 371 [1974]; People v Molineux, 168 NY 264 [1901]). All other branches of the omnibus motion have been reviewed and are DENIED as redundant of motions [*8]decided herein, duplicative of applicable constitutional or statutory guidelines, or unsupported by defendant's arguments and the record.
The People are reminded of their continuing discovery, Brady and Giglio obligations (see CPL art 245; Giglio v US, 405 US 150 [1972]; Brady v Maryland, 373 US 83 [1963]). A defense CoC is ORDERED to be served and filed by July 12, 2024 (see CPL 245.20 [4]; 245.50 [2]). This matter is adjourned to July 16, 2024, for hearings and trial. The parties are ORDERED to timely prepare therefor.
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
Dated: June 24, 2024
Bronx, New York
E. Deronn Bowen, J.C.C.

Footnotes

Footnote 1:In a branch of a consolidated omnibus motion dated April 10, 2024, defendant questions whether the People actually served and filed a supplemental certificate of compliance (SCoC) on January 31, 2024, averring that "it appears that the prosecution did not actually file a supplemental certificate of compliance identifying those disclosures until February 15, 2024." This undeveloped claim is rejected in light of the memorialization in the court action sheet for February 1, 2024, that the People had served and filed an SCoC the day before, on January 31, 2024 (see People v Perkins, 175 AD3d 1327, 1328 [2019] ["the 'court action sheet' [is] provided to this Court on appeal, of which we may take judicial notice"]).

Footnote 2:Defendant has filed two motions during the instant motion practice period: an "omnibus" motion dated April 8, 2024, that is in actuality a suppression/preclusion motion, and a CoC-invalidation/dismissal motion dated April 10, 2024. The court, on its own motion, GRANTS CONSOLIDATION of the two motions into a single omnibus motion dated April 10, 2024.

Footnote 3:Who among us has not, for example, sent a rushed, follow-up email containing an attachment mistakenly omitted from a preceding email?

Footnote 4:CPL 245.35 (1) includes a critical mandate that does not get the attention it deserves: the parties must confer in mutual good faith to "reach an accommodation" over each and every discovery dispute (id. [emphasis added]). Certainly, what accommodations are appropriate is an item-by-item, case-by-case determination to be made during the parties' private CPL 245.35 (1) conferencing. That being said, the court, having adjudicated CPL 245.35 (2) conferences over discovery disputes ranging from the extremely serious to the pettily frivolous, finds it is hard to imagine many circumstances in which absolutely no accommodation can be reached whatsoever over discovery disputes if both parties approach CPL 245.35 (1) conferencing in good faith and with "due diligence," which is "a familiar and flexible standard that requires the [parties] to make reasonable efforts to comply with statutory directives" (People v Bay, 41 NY3d 200, 211 [2023]).
Disagreements over purported discovery, their material importance and "related[ness] to the subject matter of the case" (CPL 245.20 [1]) are better resolved by the parties during the private negotiations and horse-trading that CPL 245.35 (1) conferencing is meant to be. The failure of either, or both, of the parties to obey the statutory directive—to confer in a mutual, good-faith attempt to reach an accommodation over discovery disputes—could well constitute "a showing of good cause . . . [for] the court . . . [to] order that discovery . . . be denied, restricted, conditioned or deferred, or make such other order as is appropriate" (CPL 245.70 [1]). Such failure may also constitute good cause to invalidate a CoC or to sanction the offending party (see CPL 245.80 [2]; People v Escobales, 204 AD3d 1157, 1159 [2022] [the discovery statute " 'recognizes the importance of parties and the court taking available measures to attempt to resolve discovery disputes and reach reasonable accommodation' "], quoting People v Bonifacio, 179 AD3d 977, 979 [2020]). "[A]n attorney's duty to zealously represent a client is circumscribed by an 'equally solemn duty to comply with the law and standards of professional conduct' " (People v DePallo, 96 NY2d 437, 441 [2001], quoting Nix v Whiteside, 475 US 157, 168 [1986]). If a party refuses to engage in CPL 245.35 (1) conferencing with the good-faith intention of reaching a reasonable accommodation over discovery disputes, despite the plain statutory expectation, then the court will have no choice but to be reasonable on that party's behalf during CPL 245.35 (2) conferencing (see People v Barrios, 82 Misc 3d 606, 613-615 [Crim Ct, Bronx County 2024]).
Fortunately, the record demonstrates that both parties in the instant matter did, in good faith, follow the commands of the discovery statute while conferencing and in bringing to the court's attention only (or predominantly) serious, intractable disputes.

Footnote 5:That the People did not serve and file a statement of readiness on or after March 15, 2024, is moot for statutory speedy trial purposes, as readiness for trial has not been a required as of March 15, 2024, when the instant motion schedule was set (see CPL 30.30 [4] [a]).

Footnote 6:See ante n 4.