People v Loja (2025 NY Slip Op 25003)

[*1]

People v Loja

2025 NY Slip Op 25003

Decided on January 6, 2025

Criminal Court Of The City Of New York, Bronx County

Bowen, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 6, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York

against
Juan Loja, Defendant.

Docket No. CR-003177-24BX

Juliana Rodgers, Assistant District Attorney, Bronx County, for the People
Samantha Inez Espada, The Bronx Defenders, for Defendant

E. Deronn Bowen, J.

Summary
1. HOLDING: The good-faith failure to timely serve and file a supplemental certificate of compliance (SCoC) is not automatically fatal to the validity of a previously-filed certificate of compliance if the party entitled to the SCoC neglects to provide CPL 245.50 (4) (b) notice or to timely challenge the sufficiency of the prior certification due to the SCoC's absence.
2. The defense application to deem invalid the CoC dated April 15, 2024, is GRANTED.
3. The defense application to deem invalid the SCoCs served and filed in this matter is DENIED as to each.
4. The defense application to dismiss the information on statutory speedy trial grounds is DENIED, as a total of 72 days are chargeable.
5. The defense application to suppress the fruits of defendant's observation, seizure and arrest is GRANTED TO THE EXTENT OF ORDERING the following pre-trial hearings: Dunaway/Huntley/Mapp/Wade/refusal/1194.
6. Sandoval and Molineux matters are RESERVED to the trial court for resolution.
7. All other branches of the defense omnibus motion are DENIED.
 I. Procedural History
Defendant, Juan Loja, was arraigned on February 4, 2024, on charges of reckless endangerment in the second degree (Penal Law § 120.20), common-law driving while intoxicated (Vehicle and Traffic Law § 1192 [3]) and driving while ability impaired (Vehicle and Traffic Law § 1192 [1]). It is alleged in an information that defendant drove a vehicle "into the front of the [complainant's] vehicle, while the [complainant] was inside of said vehicle." The deponent NYPD police officer who swore out the information attested that defendant exhibited [*2]common-law signs of intoxication at the scene of the alleged accident.
On April 15, 2024, the People served and filed a certificate of compliance (CoC) for the first time. Additional discovery was shared within 24 hours, and the next day, April 16, 2024, the People served and filed a supplemental CoC (SCoC). On May 6, 2024, the defense notified the People for the first time, in an email, of discovery noncompliance contentions. This notification was sent the day before the parties met with the court, on May 7, 2024, for a prescheduled conference over any outstanding discovery disagreements (see CPL 245.35 [2]). Following extensive oral arguments, the court, inter alia, ordered the People to turn over to the defense various reports (collectively, "calibration reports") concerning the breathalyzer instrument used to test the blood alcohol content (BAC) of defendant's breath.
Over the next three months, approximately, the parties finally engaged in private discovery conferencing (see CPL 245.35 [1]). During that period, more discoverable material was shared, and the People served and filed an SCoC on each of May 13, May 17 and June 13, 2024. Following motion practice over a protective order application by the People (see CPL 245.70 [1]; dkt no CR-003177-24BX, protective order [Crim Ct, Bronx County Aug. 2, 2024]), the parties agreed that no further discovery conferencing was needed. The instant omnibus motion schedule was then set.

II. CPL Article 245 Discovery Compliance
 A. Categories of Discovery Compliance Disagreement
In a branch of an omnibus motion dated September 24, 2024, defendant submits that the CoC and all SCoCs predating the omnibus filing are invalid due to the People's purported discovery noncompliance respecting four categories of material: (1) 911 call recordings; (2) a photograph; (3) calibration reports; and (4) eyewitness contact information. In responsive papers dated October 29, 2024, the People concede that all of the delineated material is discoverable and was not shared with the defense until after the April 15, 2024, date of the initial CoC filing. The People contend, however, that, contrary to the defense position, wholesale CoC/SCoC invalidation is unwarranted, as holistic prosecutorial due diligence can be established at the time of each certificate's respective filing.

B. Discovery Due Diligence Analysis
The court will first address, individually, the four categories of discovery material for which the defense alleges prosecutorial-compliance lapses. The court will then make "a holistic assessment of the People's efforts to comply with the automatic discovery provisions" (People v Cooperman, 225 AD3d 1216, 1220 [2024]) and assess the validity of the discovery-compliance certificates.

 1. The 911 Call Recordings
The People explained in the CoC dated April 15, 2024, the 911 call recordings related to this matter had been "requested . . . on February 9, 2024. The People received a folder with 911 calls for the correct date but learned on April 15, 2024[,] that the information pertained to a different incident. The People sent in a new request on April 15, 2024." The People reiterate in the responsive papers to the defense omnibus motion that "[o]n April 15, 2024, the assigned [prosecutor], in listening to the 911 calls and reviewing the associated paperwork, determined that the 911 call information sent to the People was mistakenly for a separate and unrelated incident."
The court agrees with the defense omnibus description of the CoC record respecting the [*3]911 recordings as being "murky, at best." In the CoC (and, subsequently, in the responsive papers) the People are silent about when the incorrect 911 call recordings were initially received from the NYPD. This omission leaves the court in the dark as to whether, for example, the People held onto timely received, 911 call recordings for a significant time, without review and without intending to share them with the defense until the eve of filing the CoC. If so, there may have been a lack of due diligence or good faith (or both) for not promptly sharing this material (see CPL 245.10 [1] [a] [iii] ["Notwithstanding the timelines contained in [this section], the prosecutor's discovery obligation . . . shall be performed as soon as practicable"]).
On the other hand, perhaps the People did not receive the incorrect 911 recordings from the NYPD until on, or soon before, April 15, 2024, when the CoC was filed. In this case, the court has no information concerning the People's diligence (or not) to obtain the recordings during the nearly 2½ months from defendant's arraignment until receipt of what turned out to be the wrong recordings. Regarding discovery compliance, "the People bear the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC" (People v Bay, 41 NY3d 200, 213 [2023]). Silence does not satisfy this burden. The court, therefore, finds that the People have not sufficiently established their diligence respecting discovery obligations over the correct 911 call recordings, as of April 15, 2024.
On April 15, 2024, upon realizing the error, the prosecution did, that same day, request the correct 911 call recordings from the NYPD. Those recordings were received, reviewed and shared with the defense within 24 hours, leading to the filing of the People's first SCoC on April 16, 2024. Therein, the prosecution documents the diligent actions taken respecting this material since the day before. The court, therefore, finds that the People satisfied their burden of "exercising due diligence and making reasonable inquiries to ascertain the" correct 911 call recordings as of April 16, 2024 (CPL 245.50 [1]).

 2. The Photograph
Defendant asserts in the omnibus that, "when asked whether there were any discoverable materials that were lost or destroyed . . . [or] unavailable" the prosecutor "made no mention of any photographs." Defendant, however, does not dispute the People's response that the prosecution had "requested any photographs taken by the NYPD as well as photographs taken by the complaining witness . . . throughout the pendency of the case, both prior to, and after, the filing of the COC." The People's responsive papers reference the SCoC filed on May 13, 2024. Therein, the People averred that "multiple attempts" to retrieve "any existing photographs" had been made. "The People reached out to the NYPD about this matter many times and specifically requested photographs on February 23, 2024; February 29, 2024, [and] April 11, 2024," all prior to filing the initial CoC on April 15, 2024. After receiving additional information from the defense on May 6, 2024, the prosecutor requested yet again the photographic evidence from the NYPD, which ultimately located a single photograph. It was turned over to the People, and promptly shared with the defense.
It would be unreasonable on the factual record here to hold the prosecution accountable for apparent NYPD oversights or errors that delayed the sharing of this discoverable material with the defense. The court, therefore, finds that the People have established their consistent due diligence and good faith in ascertaining the existence of, and then locating and procuring, the photograph, both before and after CoC filing, despite its belated disclosure.

3. The Calibration Reports
The defense first demanded from the prosecution the then-undisclosed calibration reports for the breathalyzer machine used to test defendant's BAC in the May 6, 2024, email. The People reassert in the responsive papers the same unavailing counter given during the May 7th discovery conference with the court, namely, that, because the prosecution was "not seeking to introduce any evidence of a breath test result," the calibration reports were "not related to the subject matter of the case." Instead, the People continue, as "defendant was not able to provide a sufficient blow during the chemical test analysis . . . , refusal paperwork was generated and disclosed to defense counsel prior to the People's filing of the COC." The People note that defendant is not charged with committing a per-se DWI offense for which a chemical test result is an element (see e.g. Vehicle and Traffic Law § 1192 [2]; [2-a] [a]).
Before addressing the substance of the People's argument, the court wishes, first, to note the correctness of the People's separate responsive point that the court's May 7, 2024, order to provide the calibration reports to the defense does not render the People per se noncompliant with their discovery obligations over this material. So long as statutory "strictures . . . are heeded, then '[p]ortions of materials claimed to be non-discoverable may be withheld pending a determination and ruling of the court under section 245.70.' . . . Later, court-ordered disclosure does not render the pre-CoC [withholding] impermissible if . . . [done] in conformity with" the discovery statute (People v McCray, 83 Misc 3d 1220[A], 2024 NY Slip Op 50760[U], *2-*3 [Crim Ct, Bronx County 2024], quoting CPL 245.10 [1] [a] [iv] [A]).
The court, however, issued a clear warning in McCray.
"Prosecutors must be extremely cautious and objective when deciding whether to withhold potentially discoverable material pursuant to CPL 245.10 (1) (a) (iv) (A). To invoke the withholding privilege, a prosecutor must be able to articulate a reasonable basis therefor despite the statutory presumption in favor of disclosure. The People's reasoning does not have to ultimately 'win the day' in court. However, should a defendant bring a CPL 30.30 motion to dismiss on the ground that the People failed to exercise due diligence and therefore improperly filed a COC, the People must be able to demonstrate that good faith, due diligence and reasonableness guided the [withholding] decisions made" (McCray, 2024 NY Slip Op 50760[U], *3 [internal quotation marks omitted] [emphasis added]; see CPL 245.20 [7] ["There shall be a presumption in favor of disclosure when interpreting" the discovery statute]). William C. Donnino, Prac Commentaries, McKinney's Cons Laws of NY, CPL 245.10 [Note: online version] ["a prosecutor who fails to engage in 'open file' discovery (except for 'work product' and information subject to a protective mandate of a statute or court order) may do so at his or her professional peril while also jeopardizing the viability of a prosecution"]).
Here, it is undisputed that the People intend to publish at trial defendant's alleged insufficient breath sample as proof of refusal by act to have his BAC tested accurately. Consequently, the instrument's operability and whether any fault for the alleged insufficient sample lies therewith constitute reasonable areas of defense inquiry "that relate to the subject matter of the case" (CPL 245.20 [1]). The court accepts that the prosecutorial decision to withhold the calibration reports was made in good faith. The court, further, sees no cause to question the People's diligence, especially in light of the prosecution's post-court-order responsiveness in procuring the reports. Nevertheless, the decision to withhold the calibration reports from the defense was not reasonable. The court, therefore, finds that the withholding of the calibration reports was not done in conformity with the strictures of the discovery statute (see [*4]CPL 245.10 [1] [a] [iv] [A] ["discoverable portions of such materials shall be disclosed to the extent practicable"]). As a result, the People were not compliant with their discovery obligations respecting the calibration reports as of the April 15, 2024, CoC-filing date.
After being ordered by the court on May 7, 2024, to provide the calibration reports to the defense, the People did so within the court-imposed deadline. On May 17, 2024, the People served and filed an SCoC. Therein, the People explained that, following the court's order, the prosecutor requested the calibration reports from the NYPD on each of May 9, 13 and 15, 2024, and turned them over to the defense soon after receipt. The court, therefore, finds that the People have established their discovery compliance respecting the calibration reports as of May 17, 2024.

4. Eyewitness Contact Information
 a. Discovery Compliance
The People advised in the responsive papers that the officers "had not taken down any contact information for" some of the civilian eyewitnesses seen on the officers' body-worn camera (BWC) footage. The People also "acknowledge that the additional witness information [for three civilians recorded by police officers] was mistakenly not obtained [from the NYPD] prior to the filing of the COC." By way of mitigation, the People proffer, uncontested by the defense, "that two of the three witnesses were determined to have arrived after the actual crash had occurred and after the defendant had left the vehicle," and "the contact information for one witness . . . was previously provided" in other discovery material turned over to the defense pre-CoC filing.
The People explained in an SCoC dated October 29, 2024, that on April 15, 2024, the date of CoC filing, the prosecution had disclosed to the defense the contact information for the complainant, into whose vehicle defendant had allegedly collided. After receiving an email notification of discovery objections from the defense on May 6, 2024, the parties conferred that day. Later the same day, May 6th, after "speaking with the complaining witness," the prosecutor "discovered that another individual had in fact witnessed the crash. The People obtained that individual's contact information, as well as the information of two other individuals who had arrived at the scene after the crash and disclosed it to defense counsel on May 6, 2024." Brief synopsis: After the defense provided the prosecution with statutorily required notice (see CPL 245.50 [4] [b]), the prosecution immediately addressed the discovery issue, obtained the missing material and shared it with the defense, all on the same day. This "reads as a fairly textbook example of a discovery-compliance issue being addressed in accordance with the statutory order" (McCray, 2024 NY Slip Op 50760[U], *5).
CPL article 245 explicitly "except[s] [ ] discovery that is lost or destroyed" from its compliance requirements (CPL 245.50 [1]). This exception applies with equal force, as relevant here, to civilian eyewitnesses whose contact information the police officers did not collect. For a host of reasons, the police may elect to not—or be practically unable to—collect contact information from every on-scene eyewitness. To the degree, if any, that this unfairly prejudices the defense, appropriate sanctions may be crafted at the hearings and trial stages (see CPL 245.80 [1] [a] ["When material or information is discoverable under this article but is disclosed belatedly, the court shall impose an appropriate remedy or sanction if the party entitled to disclosure shows that it was prejudiced"]). Concerning the CoC-invalidation application currently before the court, however, the defense does not identify, and the court does not see, a reasonable basis to question the People's due diligence or good faith.
That the People first learned about new, discoverable information post-CoC, from the complainant who was known to the People prior to CoC filing, does not constitute a per se lack of due diligence. The discovery statute recognizes that, during the course of a criminal prosecution, "either the prosecution or the defendant [may] subsequently learn[ ] of additional material" (CPL 245.60). It is neither unusual nor surprising that, in some cases, witnesses may require multiple, repetitive interviewing before the fullness of the discoverable information in their physical and mental possession may be understood. Here, the People appear objectively to have acted reasonably respecting the eyewitness contact information prior to the April 15, 2024, CoC-filing date. Additionally, the prosecutor's work to successfully obtain and share with the defense this information, within hours of receiving statutorily mandated notice from the defense that it was missing, underscores the People's overall due diligence and good faith respecting this material (see Bay, 41 NY3d at 212 ["relevant factors for assessing due diligence . . . [include] the explanation for any discovery lapse[ ] and the People's response when apprised of any missing discovery"]). The court, therefore, finds that the People have established their due diligence and good faith, pre- and post-CoC filing, in identifying, obtaining and sharing witness contact information with the defense despite its partially belated disclosure.
b. The Belatedly Filed Supplemental Certificate of Compliance
The prosecution was not so diligent in timely documenting the efforts undertaken to procure the witness contact information. Despite sharing this material with the defense on May 6, 2024, no SCoC was immediately filed. As of the filing of the defense omnibus motion nearly five months later, the People had still not filed an SCoC respecting this material. An SCoC was not filed until October 29, 2024, as companion to the People's responsive filing to the defense omnibus motion.
The discovery statute explains the importance of a timely filed SCoC. "Any supplemental certificate of compliance shall detail the basis for the delayed disclosure so that the court may determine whether the delayed disclosure impacts the propriety of the certificate of compliance" (CPL 245.50 [1-a]). In other words, "the supplemental COC permits the court to determine whether the delayed disclosure impacted the validity of the COC. Thus, the People are required to file a supplemental COC with the additional discovery" (People v Markovtsii, 81 Misc 3d 225, 229 [Crim Ct, Kings County 2023]). Defendant avers in the omnibus, correctly, that the People have provided the defense and the court with no "explanation of why the prosecution failed to disclose" timelier the witness contact information. The People counterargue in the responsive papers that, "in examining . . . the totality of the case, . . . this misstep should not invalidate the People's COC in light of the other work that has been done." The People, thus, ask the court to "den[y] adopting a per se rule to invalidate the People's COC when [an SCoC] is inadvertently" untimely.
In support, the People rely on People v Patrick Jalal (dkt no CR-017216-23BX, decision and order [Crim Ct, Bronx County March 28, 2024] [Matthew V. Grieco, J.]), which "decline[d] to adopt a per se rule" that the failure to file an SCoC renders invalid the initial CoC (id., at 10). Yet, this determination is not so unconditional as the People suggest. The "most significant[ ]" reason for the Jalal court not invalidating the CoC, despite no SCoC filing upon the service of supplemental discovery on the defense, was that "the People's email correspondence and other communications allowed the defense (and the court) to evaluate discovery compliance" (id.). Stated more broadly,
"the good-faith failure to serve and file an SCoC that implicates Occam's razor is not a strict-liability cause for automatic CoC-invalidation. I.e., . . . if an SCoC would provide no material, previously unknown information relevant to gauging a party's discovery due diligence, then the good-faith failure to serve and file one does not mandate per se the invalidation of the preceding CoC" (McCray, 2024 NY Slip Op 50760[U], *4).
Indeed, the Markovtsii court found that the "failure to file the supplemental COC impacts the original COC" in that matter "because good faith and due diligence can't be demonstrated" (Markovtsii, 81 Misc 3d at 229). Thus, the Markovtsii court, too, apparently recognized implicitly that which the Jalal and McCray courts made clear, namely, that, if an alternative memorialization of a party's due diligence and good faith exists, it may serve to fill an explanatory hole caused by a missing SCoC.
Here, the severely delinquent SCoC—like in Markovtsii and unlike in Jalal and McCray—does not implicate Occam's razor. The subject SCoC (and the additional explanation provided in the responsive papers served and filed the same day) did provide the defense and the court with "material, previously unknown information relevant to gauging [the People's] discovery due diligence" (McCray, 2024 NY Slip Op 50760[U], *4). There is no alternative memorialization of the prosecution's diligence respecting the eyewitness contact information to fill in the extended explanatory hole caused by the People's six-month, SCoC-filing delay. The court, therefore, finds that, while the SCoC-filing delay does not implicate the People's good faith, it does constitute a lack of due diligence (see Bay, 41 NY3d at 212 ["the plain terms of the statute make clear that while good faith is required, it is not sufficient standing alone and cannot cure a lack of diligence"]).
There is, however, more to the analysis. The omnibus complaint, that "no SCOC was ever filed including an explanation of why the prosecution failed to disclose this information," evinces the defense's awareness that a necessary SCoC was AWOL. From the record, the omnibus filing was the first defense notification about the SCoC truancy, i.e., that the People had made an oversight constituting a potential defect or deficiency with the original CoC.
"To the extent that the party is aware of a potential defect or deficiency related to a certificate of compliance or supplemental certificate of compliance, the party entitled to disclosure shall notify or alert the opposing party as soon as practicable" (CPL 245.50 [4] [b] [emphasis added]). Thus, with the addition of subsection (4) (b), "CPL 245.50 was amended to require that parties must notify opposing parties of a COC deficiency or challenge the sufficiency of a COC as soon as practicable" (Bay, 41 NY3d at 210).
"Although not expressly stated, the apparent intent in mandating that the opposing party should be notified of or alerted to the defect or deficiency 'as soon as practicable' is to provide that party an opportunity to address the complaint . . . [and to] allow a reasonable time for the parties to resolve a purported defect or deficiency set forth in a notice or alert" (William C. Donnino, Practice Commentaries, McKinney's Cons Laws of NY, CPL 245.50, quoting CPL 245.50 [4] [b]; see People v Seymour, 84 Misc 3d 23, 25 [App Term, 2d Dept, 9th & 10th Jud Dists 2024] ["as defendant's first notification of any deficiency in, or challenge to the sufficiency of, the COC was 72 days after the prosecution filed its COC, when defendant filed his motion, defendant's motion, under the circumstances presented herein, was properly denied as untimely"]; People v Little, 83 Misc 3d 1213[A], 2024 NY Slip Op 50706[U], *1 [Sup Ct, Kings County 2024] [*5]["defendant's delay in challenging the People's certificate of compliance is unreasonable under the circumstances"]; People v Sellie, 77 Misc 3d 1234[A], 2023 NY Slip Op 50093[U], *5 [Schenectady County Court 2023] ["Where, as here, the defense is aware of a potential defect or deficiency related to a certificate of compliance, counsel must 'notify or alert the opposing party as soon as practicable' of the defect"], quoting CPL 245.50 [4] [b]).
There certainly are aspects of a criminal case for which there is absolutely no defense duty or burden at the trial level (see e.g. People v Brown, 28 NY3d 392, 403 [2016] ["CPL 30.30, 'was enacted to serve the narrow purpose of insuring [sic] prompt prosecutorial readiness for trial' "], quoting People v Sinistaj, 67 NY2d 236, 239 [1986]; People v Alejandro, 70 NY2d 133, 134-135 [1987] ["The information was insufficient on its face because it lacked [ ] necessary nonhearsay allegations . . . . We hold that this omission constituted a jurisdictional defect which was not waived by defendant's failure to raise the issue until after completion of the trial"]). Discovery notification, by the plain language of CPL 245.50 (4) (b), is not such an aspect. Instead, "[t]he discovery statute's interlocking provisions place clear duties upon both partiesto approach discovery disputes with mutual good-faith, accommodation, reasonableness and due diligence" (McCray, 2024 NY Slip Op 50760[U], *7, [emphasis in the original]; see People v DePallo, 96 NY2d 437, 441 [2001] ["an attorney's duty to zealously represent a client is circumscribed by an 'equally solemn duty to comply with the law and standards of professional conduct' "], quoting Nix v Whiteside, 475 US 157, 168 [1986]).
The Court of Appeals has
"repeatedly recognized in matters of statutory . . . interpretation, legislative intent is the great and controlling principle, and the proper judicial function is to discern and apply the will of the [Legislature]. To that end, ascertaining legislative intent involves considering the spirit and purpose of the act and the objects to be accomplished" (Matter of Sedacca v Mangano, 18 NY3d 609, 615 [2012] [internal quotation marks omitted]; see Bay, 41 NY3d at 211 ["In resolving questions of statutory interpretation, our primary consideration . . . is to ascertain and give effect to the intention of the Legislature"] [internal quotation marks omitted]).
In that vein, it is quite clear that the primary legislative intent behind the CPL article 245 discovery schema is to better facilitate the parties in making more knowing, intelligent choices surrounding plea and trial strategies.
"Prior to 2020 [the year CPL article 245 went into effect], discovery procedures were cumbersome, outdated, and inefficient, resulting in defendants being blindsided by late disclosure of important evidence on the eve of trial. The old restrictive rules [that CPL article 245 replaced] also inhibited, at great taxpayer cost, defendants' ability to reach reasonable pre-trial dispositions of their cases precisely because they lacked sufficient early access to the evidence against them.
The purpose of and justification for article 245 was specifically to eliminate 'trial by ambush;' to remedy the above inequities by mandating earlier and broader discovery obligations by the prosecution, increasing efficiency in prosecutions and fairness to both sides. CPL article 245 seeks to ensure that defendants and their attorneys can intelligently investigate, secure and use any potentially exculpatory evidence, fairly weigh a guilty plea offer, or develop an appropriate trial strategy. Article 245 simply effectuates long-standing legislative and constitutional goals of evidence sharing: enabling defendants to [*6]make better-informed trial and plea decisions, minimizing tactical and often unfair advantages to one side, and increasing to some degree the opportunity for an accurate determination of guilt or innocence" (People v Godfred, 77 Misc 3d 1119, 1123-1124 [Crim Ct, Bronx County 2022]; see Bay, 41 NY3d at 208 ["Requiring early and broader disclosure, the Task Force [on Criminal Discovery] concluded, would facilitate expeditious resolution of cases and better enable defense counsel to investigate and prepare for trial"]; People v Clark, 83 Misc 3d 1295[A], 2024 NY Slip Op 51296[U], *3 [Nassau Dist Ct, 1st Dist 2024] ["the overriding intent of the changes to discovery procedure was to get the information into the hands of the defendant and defense counsel expeditiously . . . in order to promote a quicker resolution of the matter and provide a defendant with complete knowledge of the evidence in the case"]; People v DeMilio, 66 Misc 3d 759, 762 [Dutchess County Ct 2020] ["The legislative history to Article 245 pounds a steady beat: that broad pretrial discovery is essential to a fair and just criminal justice system; that the discovery afforded by the former Article 240 was unduly restrictive; and that the comprehensive discovery provided by Article 245 will promote better and more efficient outcomes"]).
The courts are also in quite uniform agreement that the State Legislature did not create CPL article 245
"to encourage gamesmanship by defendants seeking to create 'an inescapable trap for the diligent prosecutor who professionally, assiduously and in good faith attempts to comply' with their new procedures. Instead, the rules seek not to punish unintentional or harmless non-compliance, but to ensure that defendants get a fair trial" (Godfred, 77 Misc 3d at 1124, quoting People v Erby, 68 Misc 3d 625, 633 [Sup Ct, Bronx County 2020]; see McCray, 2024 NY Slip Op 50760[U], *6-*7 ["Neither the court's reading of CPL article 245, nor a review of its legislative history, reveals the State Legislature as having intended the discovery statute to serve as a prosecutorial obstacle course of Navy SEAL Hell Week proportions, where even the most minor of slip-ups, oversights, errors and delays are grounds for immediate CoC invalidation"]; People v Valdez, 80 Misc 3d 544, 555 [Crim Ct, Kings County 2023] ["Equity would not be served if the defense were allowed to . . . fail to inform the Prosecutor as soon as practicable their defects with the COC while simultaneously seeking to invalidate the People's COC"]); People v Smith, 79 Misc 3d 649, 654 [Sup Ct, Queens County 2023] ["In enacting the new discovery statute, the Legislature did not intend to promote gamesmanship, but rather to ensure the free flow of information from the police to the prosecutor and ultimately to the defendant"]; People v Kaba, 75 Misc 3d 1218[A], 2022 NY Slip Op 50538[U], *3 [Cohoes City Ct 2022] ["all too often, the application of CPL § 245.50 has turned discovery into a game of 'gotcha' which can often lead to the dismissal of cases for the unwary, but well-intentioned, prosecutor"]; People v Barralaga, 73 Misc 3d 510, 520-521 [Crim Ct, NY County 2021] ["[I]t would encourage gamesmanship to permit the defense to allow the speedy trial clock to run for an unreasonable period before . . . contacting the prosecutor to resolve discovery disputes. CPL 30.30 (5) was enacted to protect a defendant from being unfairly disadvantaged preparing for trial by the withholding of discovery. That protection must not be used as a sword by the defendant to run out the CPL 30.30 clock"]).
In deference to the legislative intent undergirding CPL article 245, the court may not stand idly [*7]by if the rules of discovery compliance are being contorted—intentionally or not—into a game of gotcha or "Where's Waldo" (see People v Barrios, 82 Misc 3d 606, 612 [Crim Ct, Bronx County 2024]). Accordingly, the court HOLDS, as a matter of apparent first impression, that the good-faith failure to timely serve and file a supplemental certificate of compliance (SCoC) is not automatically fatal to the validity of a previously-filed certificate of compliance if the party entitled to the SCoC neglects—intentionally or not—to provide CPL 245.50 (4) (b) notice or to timely challenge the sufficiency of the prior certification due to the SCoC's absence.
To be clear, the good-faith failure to serve and file a necessary SCoC is not automatically excused either. Rather, as with all matters of discovery compliance, the "analysis of whether the People made reasonable efforts sufficient to satisfy CPL article 245 is fundamentally case-specific, as with any question of reasonableness, and will turn on the circumstances presented" (Bay, 41 NY3d at 212). Importantly, this analysis includes "no rule of 'strict liability'; that is, the statute does not require or anticipate a 'perfect prosecutor' " (id.; see People v Vaillant, 80 Misc 3d 856, 870 [Crim Ct, Bronx County 2023] [" 'flawless' perfection is not the proper standard against which to judge the People's discovery compliance"]).
Under the facts and circumstances of the instant matter, the court sees no reason to disbelieve that, had the prosecution realized, or been notified, timelier, the belated SCoC would have been provided promptly and in substantively the same form as the SCoC served and filed on October 29, 2024. Further, a timelier SCoC would have established the People's due diligence respecting eyewitness contact information as of the April 15, 2024, CoC-filing date, despite the belated disclosure of this material, just as the October 29th SCoC does. Consequently, the court exercises its discretionary authority to "make such [ ] order as is appropriate" (CPL 245.70 [1]) to excuse the People's good-faith delay in serving and filing an SCoC respecting the eyewitness contact information.

5. Holistic Discovery Due Diligence
The Court of Appeals, recognizing that "the relevant factors for assessing due diligence may vary from case to case" (Bay, 41 NY3d at 212), instructs that the
"courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (id.).
Consequently,
"[i]n Bay, the Court of Appeals made clear that whether the People exercised due diligence is not to be examined in a vacuum. To that end, the non-exclusive list of factors articulated by the Court in that case calls for a holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test that would require us to conclude that a COC is improper if the People miss even one item of discovery" (Cooperman, 225 AD3d at 1220, citing Bay 41 NY3d at 212-213).
In the instant matter, the court finds that "the belated disclosures" of the photograph and witness contact information "were made in good faith and with due diligence" (People v Macaluso, 230 AD3d 1158, 1160 [2024]), for the reasons already given (see ante II.B.2; II.B.4.a). The People acted diligently prior to CoC filing, and, thereafter, the material was [*8]diligently "provided to the defense once the People were made aware of the existence of the undisclosed material" (id.). The court excuses the SCoC delay, for the reasons already given (see ante II.B.4.b). The court finds that this good-faith error does not require, as a consequence, the invalidation of any of the previously filed discovery compliance certificates.
The court cannot overlook the People's shortcomings respecting the correct 911 call recordings of real-time eyewitnesses (see ante II.B.1). Although but a single area of discovery, the People's two-month delay in either realizing or notifying the NYPD that the wrong 911 calls had been received is too inexcusable a lapse in holistic due diligence to forgive. The court, therefore, finds that the prosecution was not holistically diligent with its discovery obligations on April 15, 2024, in light of the significant shortcomings respecting the 911 call recordings. Accordingly, the branch of the defense motion seeking invalidation of the People's CoC dated April 15, 2024, is GRANTED. However, for the reasons already given, the court reiterates that that the People were compliant with their discovery obligations respecting this material as of the April 16, 2024, date of SCoC service and filing.
The prosecution's refusal to turn over the calibration reports to the defense is the last remaining discovery compliance issue (see ante II.B.3). The People's intentional refusal to err on the side of "a presumption in favor of disclos[ing]" this material constituted a major discovery blunder (CPL 245.20 [7]; see William C. Donnino, Prac Commentaries, McKinney's Cons Laws of NY, CPL 245.10 [Note: online version] ["a prosecutor who fails to engage in 'open file' discovery (except for 'work product' and information subject to a protective mandate of a statute or court order) may do so at his or her professional peril while also jeopardizing the viability of a prosecution"]). Yet, an added wrinkle complicates the issue.
The defense first provided the prosecution with CPL 245.50 (4) (b) notice about the missing calibration reports on May 6, 2024. In fact, this was the first time that the defense had notified the prosecution about any purported discovery failings in this matter. Considering the volume of videographic, audiographic and documentary discovery turned over by the Prosecution in this matter, as well as defense counsel's general caseload, this does not appear objectively to be an unreasonable delay before notifying the People of discovery shortcomings.
That being said, it is also the case that the defense did not provide the prosecution with the statutorily mandated notice of discovery oversights until just one day before a prescheduled CPL 245.35 (2) conference with the court. This left no reasonable time for private CPL 245.35 (1) conferencing between the parties, which may have lessened or obviated the need for conferencing with the court. The court has commented previously that the
"Legislature expressly intends the parties to first confer privately over all discovery disagreements. Only in the (rare) instances that the parties cannot, during CPL 245.35 (1) conferencing, reach agreement on reasonable accommodations should the parties request a CPL 245.35 (2) conference with the court or its staff to address the (again, rare) intractable discovery disputes" (McCray, 2024 NY Slip Op 50760[U], *2).
Here, the eleventh-hour, defense notification gave the prosecution woefully little time to even try to take corrective action.
"The failure of either, or both, of the parties to obey the [CPL 245.35 (1)] directive—to confer in a mutual, good-faith attempt to reach an accommodation over discovery disputes—could well constitute 'a showing of good cause . . . [for] the court . . . [to] order that discovery . . . be denied, restricted, conditioned or deferred, or make such other order as is appropriate.' Such failure may also constitute good cause to invalidate a CoC or to [*9]sanction the offending party" (id., at *2 n 4, quoting CPL 245.70 [1]).
Additionally, CPL 245.50 (4) (b) notification was not provided until after 92 days had passed since defendant's arraignment, i.e., after the People's statutory speedy trial time would have expired (see CPL 30.30 [1] [b]), were the court to find that prosecutorial shortcomings negatively impacted the validity of the predating compliance certificates. Arguably, it would pervert the legislative intent of the notice requirement to issue, in this case, a CoC- or SCoC-invalidation ruling that would effectively mandate the dismissal of an information on statutory speedy trial grounds despite the People having not been given a noticed opportunity to correct any discovery errors (see People v Sanders, 81 Misc 3d 1223[A], 2023 NY Slip Op 51435[U], *3 [Crim Ct, Bronx County 2023] ["Any undue delay by defendant in raising any defects [relating to the CoC] or objecting by motion is not chargeable to the People"]).
On the other hand, it was unreasonable for the People to not have come to the conclusion on its own, even absent defense notice, that the calibration reports were discoverable, particularly in light of the prosecution's trial strategy. The court has previously addressed this "caveat" to the notice mandate:
"In serving and filing a CoC, the People must certify that prior thereto they have exercised 'due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery.' Consequently, the People do not get to ignore discovery issues known to them just because defendant is unaware or has not provided CPL 245.50 (4) (b) notice. A CoC may be invalidated if, at the time of CoC service and filing, the People had actual or constructive knowledge of discovery shortcomings" (People v Guzman, 81 Misc 3d 1217[A], 2023 NY Slip Op 51363[U], *2 [Crim Ct, Bronx County 2023], citing CPL 245.50 [1]).
In the instant matter, upon a holistic assessment, the court finds that the People's unreasonable refusal to turn over the clearly discoverable calibration reports was not so egregious, on the whole, as to warrant invalidation of the otherwise valid SCoCs served and filed in this matter. "Even though" what should have been the decision to turn over the calibration reports "was not particularly complex, which cuts against a finding of due diligence, most of the other remaining factors, when considered as part of a holistic assessment, support the conclusion that the People exercised due diligence" (People v Lawrence, 231 AD3d 1497, 1500 [2024] [internal quotation marks omitted]). Accordingly, the branch of the defense motion seeking invalidation of the April 16, May 13, May 17, June 13, and October 29, 2024, SCoCs is DENIED. The SCoCs are deemed valid.

III. CPL 30.30 Statutory Speedy Trial Calculation
The first valid certificate of discovery compliance was served and filed by the People on April 16, 2024. Consequently, the defense application to deem illusory the statement of readiness (SoR) that accompanied the now-invalidated April 15th CoC is GRANTED, and the defense application to deem illusory the respective SoRs that accompanied each SCoC is DENIED. The court finds that the 72-day period from February 5, 2024, the day after defendant's arraignment, through and including April 16, 2024, is chargeable (see General Construction Law § 20; People v Stiles, 70 NY2d 765, 767 [1987]; People v DiMeglio, 294 AD2d 239, 239-240 [2002]). All time thereafter, through the date of this decision and order, is excludable due to the People's validly filed SoRs; the court-granted time exclusion for discovery compliance; and motion practice (see CPL 30.30 [4] [a] [excluding from statutory speedy trial [*10]calculations any "reasonable period of delay resulting from other proceedings concerning the defendant"]). As the People's 90-day "clock" is not expired, the defense application to dismiss the information on statutory speedy trial grounds is DENIED.

 IV. Remaining Branches of the Defense Omnibus Motion
The defense omnibus applications to suppress the fruits of defendant's observation, seizure and arrest are GRANTED to the extent of ORDERING the following hearings: Dunaway/Huntley/Mapp/Wade/refusal/1194. Other defense applications for suppression or, alternatively, hearings are DENIED as duplicative of hearing requests herein granted or unsupported by the defense arguments and the record. In particular, the branch of the omnibus motion effectively moving for a Gursey hearing is DENIED. The bareboned declaration that the "chemical breath test was performed in violation of [defendant's] limited right to consult with counsel before deciding whether to consent to chemical testing" is insufficient to grant a hearing. Defendant does not sufficiently allege any of the three points necessary to obtain Gursey suppression, or hearings thereon, i.e., that "such a request" for counsel was made; that counsel was "physically present [or could] be reached promptly by telephone or otherwise" at the time of the request; and that it was "feasible for the police to allow defendant to attempt to reach counsel without unduly delaying administration of the chemical test" (People v Smith, 18 NY3d 544, 549 [2012]; see People v Gursey, 22 NY2d 224 [1968]).
Sandoval and Molineux motions are RESERVED to the trial court for resolution (see People v Sandoval, 34 NY2d 371 [1974]; People v Molineux, 168 NY 264 [1901]). All other branches of the omnibus motion have been reviewed and are DENIED as redundant of motions decided herein, duplicative of applicable constitutional or statutory guidelines, or unsupported by defendant's arguments and the record. 
The People are reminded of their continuing discovery, Brady and Giglio obligations (see CPL art 245; Giglio v US, 405 US 150 [1972]; Brady v Maryland, 373 US 83 [1963]). The defense, too, is reminded of its ongoing discovery obligations (see CPL 245.20 [4]; 245.50 [2]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
Dated: January 6, 2025
Bronx, New York
E. Deronn Bowen, J.C.C.